# EXHIBIT B

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

## MARCH 2026

E-Filing Number: 2603065400

03887

| | |
|---|---|
| **PLAINTIFF'S NAME**<br>ABDULLA AJETI | **DEFENDANT'S NAME**<br>LIFE INSURANCE COMPANY OF NORTH AMERICA |
| **PLAINTIFF'S ADDRESS**<br>GJON SERRECI, APT. NO. 100 1ST FLOOR<br>FERIZAJ | **DEFENDANT'S ADDRESS**<br>1601 CHESTNUT STREET TL14A<br>PHILADELPHIA PA 19192 |
| **PLAINTIFF'S NAME**<br>ARBEN SOPAJ | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS**<br>12 QERSHOR BLVD APT NO 5, 1ST FLOOR<br>FERIZAJ | **DEFENDANT'S ADDRESS** |
| **PLAINTIFF'S NAME**<br>ARJAN RAMADANI | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS**<br>RIZA MATOSHI NEKODIM VILLAGE<br>FERIZAJ | **DEFENDANT'S ADDRESS** |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 17 | 1 | [X] Complaint<br>[ ] Writ of Summons | [ ] Petition Action<br>[X] Transfer From Other Jurisdictions | [ ] Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

**CASE TYPE AND CODE**

1J - BAD FAITH

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED<br>PRO PROTHY<br><br>MAR 26 2026<br><br>**B. BALILONIS** | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES          NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>ABDULLA AJETI , ARBEN SOPAJ , ARJAN RAMADANI , AVNI MEHMETI , BEKIM ZAH</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>SARAH O. SCHINDLER | ADDRESS<br>2000 MARKET ST<br>SUITE 2800<br>PHILADELPHIA PA 19103 |
|---|---|
| PHONE NUMBER: (215)851-9700 | FAX NUMBER: (215)851-9701 | |
| SUPREME COURT IDENTIFICATION NO.<br>314912 | E-MAIL ADDRESS<br>sschindler@kolsbygordon.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*SARAH SCHINDLER* | DATE SUBMITTED<br>Thursday, March 26, 2026, 02:03 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF PLAINTIFFS:

1. ABDULLA AJETI
   GJON SERRECI, APT. NO. 100 1ST FLOOR
   FERIZAJ
2. ARBEN SOPAJ
   12 QERSHOR BLVD APT NO 5, 1ST FLOOR
   FERIZAJ
3. ARJAN RAMADANI
   RIZA MATOSHI NEKODIM VILLAGE
   FERIZAJ
4. AVNI MEHMETI
   BILALL SHALA APT NO. 71
   FERIZAJ
5. BEKIM ZAHIRI
   KOMOGLLAVE VILLAGE
   FERIZAJ
6. BURHAN LIMANI
   KOMOGLLAVE VILLAGE APT NO 17
   FERIZAJ
7. BURIM JASHARI
   DOGANAJ VILLAGE NEXHAT JASHARI APT NO 14
   FERIZAJ
8. ENVER RAMADANI
   NIKADIN-VILLAGE RAMADAN KABASHI APT NO 45
   FERIZAJ
9. FATMIR REXHAJ
   CEN DUGOLLI, APT NO. 8
   FERIZAJ
10. FATON GASHI
    BRAHIM ADEMI APT NO 405
    FERIZAJ
11. GYNER ISMAILI
    DALIP, DALIPI APT NO 22
    GJILAN
12. JETON JASHARI
    BIBAJ ADVI SHAQBIBA
    FERIZAJ
13. NASER RRAHMANI
    GAZMEND ZAJMI APT NO 71
    FERIZAJ
14. RAMIZ UKSHINI
    SMIR VILLAGE MIRALI SEJDIU
    VITI
15. SALIH OSMANI
    KOMOGLLAVE VILLAGE SKENDER OSMANI, NO. 20
    FERIZAJ
16. SHPEJTIM SHERIFI
    POJAT
    FERIZAJ
17. VLORA PAQARIZI
    QAZIM DOBERDLANI LLAMELLA B NO. 13
    PRISHTINA

KOLSBY, GORDON, ROBIN, & SHORE
SARAH O. SCHINDLER, ESQ.
ATTORNEY I.D. NO. 314912
2000 MARKET STREET – 28TH FLOOR
PHILADELPHIA, PA 19103
PHONE: (215) 851-9700
FAX (215) 851-9701
SSCHINDLER@KOLSBYGORDON.COM



ATTORNEY FOR PLAINTIFFS

THIS IS NOT AN ARBITRATION
MATTER. ASSESSMENT OF
DAMAGES HEARING REQUIRED

| | |
|---|---|
| **ABDULLA AJETI**<br>Gjon Serreçi, Apt No. 100, 1st Flr<br>Ferizaj, 70000<br>Republic of Kosovo | IN THE COURT OF COMMON PLEAS<br>FOR PHILADELPHIA COUNTY<br><br>CIVIL ACTION COMPLAINT |
| **ARBEN SOPAJ**<br>12 Qershor Bld, Apt No. 5, 1st Flr;<br>Ferizaj, 70000<br>Republic of Kosovo | _March_ TERM, 2026<br><br>CASE NO. _03887_<br>JURY TRIAL DEMANDED |
| **ARJAN RAMADANI**<br>Nikadin Village, Ramadan Kabashi Apt No. 9<br>Ferizaj, 70000<br>Republic of Kosovo | |
| **AVNI MEHMETI**<br>Bilall Shala, Apt. No.71,<br>Ferizaj, 70000<br>Republic of Kosovo | |
| **BEKIM ZAHIRI**<br>Komogllave Village<br>Ferizaj, 70000<br>Republic of Kosovo | |
| **BURHAN LIMANI**<br>Komogllave Village, Apt No.17,<br>Ferizaj, 70000<br>Republic of Kosovo | |
| **BURIM JASHARI**<br>Doganaj Village, Nexhat Jashari, Apt. No.14<br>Ferizaj, 70000<br>Republic of Kosovo | |
| **ENVER RAMADANI**<br>Nikadin Village | |

Case ID: 260303887

Ramadan Kabashi, Apt No. 45
Ferizaj, 70000,
Republic of Kosovo

**FATMIR REXHAJ**
Cen Dugolli, Apt. No.8
Ferizaj, 70000,
Republic of Kosovo

**FATON GASHI**
Brahim Ademi, Apt. No.405
Ferizaj, 70000
Republic of Kosovo

**GYNER ISMAILI**
Dalip, Dalipi Apt. No. 22
Gjilan, 60000,
Republic of Kosovo

**JETON JASHARI**
Bibaj – Avdi Shaqbiba,
Ferizaj, 70000,
Republic of Kosovo

**NASER RRAHMANI**
Gazmend Zajmi, Apt. No.71
Ferizaj, 70000,
Republic of Kosovo

**RAMIZ UKSHINI**
Smir Village
Mirali Sejdiu,
Viti, 61000
Republic of Kosovo

**SALIH OSMANI**
Komogllave Village,
Skender Osmani, No.20,
Ferizaj, 70000
Republic of Kosovo

**SHPEJTIM SHERIFI**
Pojat
Ferizaj, 70000
Republic of Kosovo

Case ID: 260303887

**AND**

**VLORA PAQARIZI**
Qazim Doberdelani, Llamella B, No. 13
Prishtina, 10000
Republic of Kosovo

        *Plaintiffs*

v.

**LIFE INSURANCE COMPANY
OF NORTH AMERICA**
1601 Chestnut Street, TL14A
Philadelphia, PA 19192    *Defendant*

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**NOTICE TO DEFEND**

| *NOTICE* | *AVISO* |
|---|---|
| <u>You have been sued in court</u>. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*<br><br>**Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197** | <u>Le han demandado a usted en la corte</u>. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.<br><br>*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*<br><br>**Asociacion De Licenciados<br>De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197** |

Case ID: 260303887

## COMPLAINT IN A CIVIL ACTION

Plaintiffs, Abdulla Ajeti, Arben Sopaj, Arjan Ramadani, Avni Mehmeti, Bekim Zahiri, Burhan Limani, Burim Jashari, Enver Ramadani, Fatmir Rexhaj, Faton Gashi, Gyner Ismaili, Jeton Jashari, Naser Rrahmani, Ramiz Ukshini, Salih Osmani, Shpejtim Sherifi, and Vlora Paqarizi, by and through undersigned counsel, hereby state and allege as follows against Defendant Life Insurance Company of North America. In the following allegations, Plaintiffs will refer to Life Insurance Company of North America as "CIGNA."

### I.    PARTIES

1.    Abdulla Ajeti ("Mr. Ajeti") is a resident and citizen of the Republic of Kosovo.

2.    Arben Sopaj ("Mr. Sopaj") is a resident and citizen of the Republic of Kosovo.

3.    Arjan Ramadani ("Mr. Ramadani") is a resident and citizen of the Republic of Kosovo.

4.    Avni Mehmeti ("Mr. Mehmeti") is a resident and citizen of the Republic of Kosovo.

5.    Bekim Zahiri ("Mr. Zahiri") is a resident and citizen of the Republic of Kosovo.

6.    Burhan Limani ("Mr. Limani") is a resident and citizen of the Republic of Kosovo.

7.    Burim Jashari ("Mr. Jashari") is a resident and citizen of the Republic of Kosovo.

8.    Enver Ramadani ("Mr. Ramadani") is a resident and citizen of the Republic of Kosovo.

9.    Fatmir Rexhaj ("Mr. Rexhaj") is a resident and citizen of the Republic of Kosovo.

10.    Faton Gashi ("Mr. Gashi") is a resident and citizen of the Republic of Kosovo.

11.    Gyner Ismaili ("Mr. Ismaili") is a resident and citizen of the Republic of Kosovo.

12.    Jeton Jashari ("Mr. Jashari") is a resident and citizen of the Republic of Kosovo.

13.    Naser Rrahmani ("Mr. Rrahmani") is a resident and citizen of the Republic of

Kosovo.

14.    Ramiz Ukshini ("Mr. Ukshini") is a resident and citizen of the Republic of Kosovo.

15.    Salih Osmani ("Mr. Osmani") is a resident and citizen of the Republic of Kosovo.

16.    Shpejtim Sherifi ("Mr. Sherifi") is a resident and citizen of the Republic of Kosovo.

17.    Vlora Paqarizi ("Ms. Paqarizi") is a resident and citizen of the Republic of Kosovo.

18.    Life Insurance Company of North America ("CIGNA") is an American multinational for-profit managed healthcare and insurance company incorporated in Pennsylvania. CIGNA maintains its principal place of business in Philadelphia, Pennsylvania at Two Liberty Place, 1601 Chestnut St., TL14A, Philadelphia, PA 19192 and offers individual and family health plans in Pennsylvania.

19.    Wherever the words "Plaintiffs," "Defendant," or "CIGNA" hereinafter appear, they shall be deemed to refer to the respective parties so acting by their authorized employees, agents, officers, and representatives. At all times and in the transactions hereinafter set forth, Plaintiffs and Defendant acted by and through their employees, agents, officers, and representatives, all of whom were duly authorized to act for and on behalf of Plaintiffs and Defendant and to bind them by contract.

## II.    CHOICE OF LAW

20.    As agreed upon in the contract between Plaintiffs and Defendant, the breach of contract claims in this complaint are governed by the laws of the state of Delaware. For Plaintiffs' extra-contractual claims, California law applies based on the location of the procurement of the insurance, the location of AECOM, and communication to Plaintiffs and CIGNA. In the alternative, Ohio law applies to Plaintiffs' extracontractual claims. In the alternative, Delaware law applies to Plaintiffs' extracontractual claims.

## III.    BACKGROUND

21.    Plaintiffs worked in Afghanistan from 2011 through 2019 for AECOM and its subsidiaries, an infrastructure consulting firm, as part of AECOM's contracts to provide support services to the United States military personnel. As part of this dangerous employment, AECOM offered Plaintiffs long-term disability insurance benefits. Plaintiffs opted to be part of this coverage, and AECOM deducted payment for the coverage from Plaintiffs' wages. AECOM both in writing and verbally, told Plaintiffs that it procured this long-term disability insurance through CIGNA.

22.    As a result of the hazardous conditions in Afghanistan, Plaintiffs each suffered injuries that disabled them from performing their job duties. As a result of these injuries in Afghanistan, Plaintiffs submitted claims to CIGNA for long-term disability benefits.

23.    After receiving the claims, CIGNA assigned adjusters to handle the claims. Within months of receipt, the adjusters then closed and denied the claims. Even though AECOM deducted payment for the insurance and represented that it obtained a policy with CIGNA, the adjusters claimed that "international employees are not covered under the policy," and were "not deemed an employee under the Long-term disability Plan."

A. **The Promised Insurance**

24.    In more detail, Plaintiffs worked in Afghanistan for AECOM, AC First LLC, and Global Sourcing Solutions ("GSS") (together the "AECOM entities"). In 2016, the Army Contracting Command–Rock Island awarded the EAGLE-AFG contract to AC First LLC, to provide contract services in support of the Army Sustainment Command. Under this contract, AC First provided maintenance, supply, and transportation services to the U.S. and Coalition partners at several locations in Afghanistan, including Kandahar and Bagram Airfields. The EAGLE-AFG

is a cost-plus-fixed-fee contract valued at $429 million with 1 base year and 4 option years. Cost-plus-fixed-fee contracts provide payment to the contractor for allowable costs, as well as a fixed-fee payment throughout the contract period of performance.

25.    To fulfill its contract, the AECOM entities used GSS and AC First to supply labor. AECOM, GSS, and AC First's internal records confirm that AECOM refers interchangeably to each entity. For example, the AECOM entities named GSS on Plaintiffs' wage records. In contrast, AC First billed that labor to the U.S. Government. Likewise, AC First represented that it is a "AECOM managed company," and AECOM was the "subscriber" for the long-term disability insurance policy.

26.    The AECOM entities contracted with Plaintiffs to provide labor in Afghanistan. Plaintiffs were nominally employed by GSS but were actually the employees of AC First and AECOM. Indeed, AC First – via a cover letter on AC First's letterhead – provided Plaintiffs their contracts with GSS. Likewise, when Plaintiffs would complete their contracts, AC First would send written confirmation of completion. As part of these contracts for employment, AECOM represented that it would offer and procure long-term disability insurance for employees working in Afghanistan, including Plaintiffs. Indeed, each Plaintiffs contract with GSS includes the following: "[i]mmediately upon start date of this AGREEMENT, the employer will offer to the Employee a benefits plan including: . . . Long-term disability."

27.    Following this agreement, as part of their benefits package in 2016 and 2017, the AECOM entities told Plaintiffs that they had contracted with CIGNA to provide long-term disability insurance.



Plaintiffs accepted the coverage with AECOM and paid monthly for the CIGNA disability insurance coverage through payroll deductions.

28.    AECOM then procured CIGNA Policy Number FLK-0981093 (the "CIGNA Policy"), which named AECOM as the subscriber on the policy. The CIGNA Policy provided long-term disability coverage for classes employees working for AECOM and its affiliates. The CIGNA Policy identified "AC First" and "AECOM Global Sourcing Solutions" as affiliates under the policy. Put differently, the policy provided coverage to employees, like Plaintiffs, who worked for either AC First or, nominally, for GSS.

29.    Despite this promise, after Plaintiffs sustained disabling injuries, they submitted claims to CIGNA for disablity coverage. In response, CIGNA closed the claims and alleged that foreign nationals, like Plaintiffs, were not covered by the CIGNA Policy. Plaintiffs therefore have filed this lawsuit against CIGNA.

**B.    Abdulla Ajeti's injury and insurance claim**

30.    Mr. Ajeti began his employment with the AECOM entities on July 8, 2012, as a driver of military vehicles. Mr. Ajeti continued employment with AECOM until December of 2016. During Mr. Ajeti's employment, he was subjected to physical and mental harm including the horrors of war at Bagram Airfield in Afghanistan.

31.    Specifically, Mr. Ajeti's employment with AECOM included traumatic events such as rocket attacks and physical invasions of the Bagram perimeter by suicide bombers. This

Case ID: 260303887

included a November 2016 ground attack at Bagram, involving suicide bombers breaching the base. This event culminated in a rapid deterioration of his psychological condition and the onset of severe symptoms such as flashbacks, nightmares, and emotional distress. As a result of the exposure of these attacks, Mr. Ajeti's psychological condition physically disabled him, manifesting in the inability to control his emotions, nightmares hindering his sleep, distress and related symptoms.

32.     Mr. Ajeti experienced symptoms including insomnia, nightmares, flashbacks, anxiety, fear, hearing loss, and significant distress that impaired his ability to function socially and occupationally. He was diagnosed with acute stress disorder and later with PTSD by both his treating physician in Kosovo and an independent medical examiner. Both medical professionals concluded that his condition was directly related to the traumatic events experienced during his employment in Afghanistan and that he was unable to work as a result.

33.     Mr. Ajeti sought medical treatment for his insomnia starting on November 28, 2016. In December of 2016, his symptoms progressed, resulting in a diagnosis of "acute stress disorder" in addition to Mr. Ajeti's sleeplessness. As a result of Mr. Ajeti's symptoms and their effect on his functionality, Dr. Cana, Mr. Ajeti's treating doctor, noted that he was unable to work.

34.     During the period that Mr. Ajeti suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Ajeti's paychecks under the CIGNA policy.



In other words, at the time of Mr. Ajeti's injuries, Mr. Ajeti was insured through his employer by CIGNA.

35.     After Mr. Ajeti sustained disabling injuries, he submitted claims to CIGNA for disability coverage on or about February 29, 2024. In that claim form, Mr. Ajeti included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. On July 15, 2024, Mr. Ajeti supplemented his claim with a Disability questionnaire response, authorizations and other information requested by CIGNA.

36.     In April 2024, CIGNA initially communicated regarding Mr. Ajeti's claim, including its false statement that Mr. Ajeti's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Ajeti's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy. CIGNA has not sent any claim correspondence regarding Mr. Ajeti's claim and has effectively denied the claim.

37.     Due to CIGNA's bad faith denial of payment of Mr. Ajeti's benefits, Mr. Ajeti has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Ajeti's insurance coverage, and/or failing to procure coverage.

C. **Arben Sopaj's injury and insurance claim**

38.     Mr. Sopaj initially began his employment with AECOM in May 2012 and worked until February 2016. He was later re-employed by AECOM from September 18, 2017, through June 11, 2018, as a Material Handling Equipment (MHE) Operator in Bagram and Kandahar, Afghanistan. During his time at AECOM, on or around May 9, 2018, Mr. Sopaj sustained injuries

to his shoulder, elbow, and neck, while moving crates with a co-worker. He left his job on June 11, 2018, to seek further medical treatment for these injuries.

39.　　Throughout his deployments, Mr. Sopaj was subjected to hundreds of rocket attacks, which intensified during holidays like EID and on Fridays. These attacks and traumatic encounters, such as witnessing a burnt, damaged vehicle containing a severed leg inside a boot, led to Mr. Sopaj having nightmares that severely hindered his sleep. The horrors of war continued through 2018, resulting in crippling insomnia. Additionally, Mr. Sopaj experienced hearing loss resulting from exposure to loud noises, such as rocket attacks, explosions, and C-RAM incidents. The date of the accident related to his hearing loss and insomnia is recorded as June 11, 2018, the last day of his employment.

40.　　Mr. Sopaj continued to seek treatment for his headaches, ear ringing, insomnia, and anxiety. On November 16, 2018, Dr. Rexhapi, Mr. Sopaj's treating provider, confirmed that Mr. Sopaj is unable to work as a result of the experiences during Mr. Sopaj's employment in Afghanistan.

41.　　During the period that Mr. Sopaj suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Sopaj's paychecks under the CIGNA policy.



In other words, at the time of Mr. Sopaj's injuries, Mr. Sopaj was insured through his employer by CIGNA.

42.     After Mr. Sopaj sustained disabling injuries, he submitted claims to CIGNA for disability coverage on or about February 29, 2024. In that claim form, Mr. Sopaj included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. On July 16, 2024, Mr. Sopaj supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

43.     In April 2024, CIGNA initially communicated regarding Mr. Sopaj's claim, including its false statement that Mr. Sopaj's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Sopaj's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

44.     On or about February 28, 2025, CIGNA issued a partial payment for Mr. Sopaj in the amount of $2,400. This payment significantly underpaid Mr. Sopaj based on his continuing and on-going disability under the insurance policy.

45.     Due to CIGNA's bad faith denial of payment of Mr. Sopaj's benefits, Mr. Sopaj has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Sopaj's insurance coverage, and/or failing to procure coverage.

## D. Arjan Ramadani's injury and insurance claim

46.    Arjan Ramadani initially began his employment with AECOM in December of 2011, to work in the maintenance department at Camp Shank Afghanistan. Mr. Ramadani continued employment with AECOM until January of 2014, returned in February of 2015, and was laid off from AECOM in July of 2016.

47.    During his time at AECOM, Mr. Ramadani sustained injuries due to the traumatic experiences he faced in the midst of war. Mr. Ramadani experiences included witnessing about 50 missiles fired into Ramadani's base by insurgents, seeing planes take off only to explode mid-flight, and in December of 2015, having to jump out of his vehicle to avoid an explosion.

48.    On August 16, 2016, after having returned home from Afghanistan, Mr. Ramadani suffered from headaches, sleeplessness and mood swings, stemming from his employment with AECOM in Afghanistan. These injuries heightened in their physical toll on Mr. Ramadani as time went on. On January 10, 2017, Mr. Ramadani again sought treatment because of stomach pains, discomfort, vomiting, stress, watery eyes, and loss of appetite in addition to his sleeplessness and mood swings.

49.    On January 12, 2017, Mr. Ramadani was referred to a psychiatrist due to his persistent symptoms. On January 31, 2017, Mr. Ramadani's treating psychiatrist, Dr. Gora, confirmed that Mr. Ramadani was unable to work due to the effect of his symptoms on his functionality. Finally, exposure to explosives during his employment culminated in Mr. Ramadani being diagnosed with a 46.87% hearing impairment rating in his right ear and 56.25% hearing impairment rating in his left ear.

50.    During the period that Mr. Ramadani suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Ramadani's paychecks under the CIGNA policy.



In other words, at the time of Mr. Ramadani's injuries, Mr. Ramadani was insured through his employer by CIGNA.

51.    After Mr. Ramadani sustained disabling injuries, he submitted claims to CIGNA for disability coverage on or about February 29, 2024. In that claim form, Mr. Ramadani included detailed claim information, medical records, his employment agreement, and evidence that he paid for the insurance.  On July 15, 2024, Mr. Ramadani supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

52.    In April 2024, CIGNA initially communicated regarding Mr. Ramadani's claim, including its false statement that the claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Ramadani's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

53. In August 2025, CIGNA "accepted the claim" but asserted that Mr. Ramadani was not owed benefits after January 19, 2019. In making this determination, CIGNA ignored that Mr. Ramadani was disabled as defined by the policy – meaning, he was unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

54. Due to CIGNA's bad faith denial of payment of Mr. Ramadani's benefits, Mr. Ramadani has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Ramadani's insurance coverage, and/or failing to procure coverage.

**E. Avni Mehmeti's injury and insurance claim**

55. Mr. Mehmeti was hired on December 29, 2011, to begin work with AECOM as a Material Handling Equipment ("MHE") Operator at Forward Operating Base Shank at Bagram Airfield in Afghanistan.

56. During his time with AECOM, Mr. Mehmeti experienced several traumatic events that would give rise to Mr. Mehmeti's injuries. The bases he was assigned to were under constant threat of attack, including by rockets and self-propelled grenades. Coming across craters, explosions, and fatalities was a common occurrence for Mr. Mehmeti. In a chief example, Mr. Mehmeti recalls that in 2015 a sniper attack killed a Georgian individual he knew on base, who worked for the Department of Defense and who Mr. Mehmeti called "Miss Davis."

57. On or about January 20, 2016, Mr. Mehmeti was forced to terminate his contract with AECOM because his physical and psychological condition disabled him, resulting in symptoms such as chronic fatigue, anxiety, headaches, and stomach pain. On July 27, 2016, after seeking treatment for his symptoms, Mr. Mehmeti's treating provider Dr. Asllani confirmed that Mr. Mehmeti was unable to work due to the effect of his symptoms on his functionality.

58. During the period that Mr. Mehmeti suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Mehmeti's paychecks under the CIGNA policy.



In other words, at the time of Mr. Mehmeti's injuries, Mr. Mehmeti was insured through his employer by CIGNA.

59. After Mr. Mehmeti sustained disabling injuries, he submitted claims to CIGNA for disability coverage on or about February 29, 2024. In that claim form, Mr. Mehmeti included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. On July 15, 2024, Mr. Mehmeti supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

60.     In April 2024, CIGNA initially communicated regarding Mr. Mehmeti's claim, including its false statement that Mr. Mehmeti's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Mehmeti's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy. Ultimately, CIGNA issued a partial payment to Mehmeti but limited his coverage. In making this inaccurate determination, CIGNA ignored that Mr. Mehmeti was disabled as defined by the policy – meaning, he was unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

61.     Due to CIGNA's bad faith denial of payment of Mr. Mehmeti's benefits, Mr. Mehmeti has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Mehmeti's insurance coverage, and/or failing to procure coverage.

F. **Bekim Zahiri's injury and insurance claim**

62.     Mr. Zahiri worked for AECOM in 2017 as a security guard in Afghanistan.

63.     As a result of his heavy work, physical strains, and carrying heavy loads - especially the body armor- during his employment with AECOM in Afghanistan, Mr. Zahiri experienced neck pain, headaches, dizziness, loss of equilibrium, and numbness in his arms and fingers. On October 29, 2018, Mr. Zahiri was diagnosed with cervicocephalea, disc herniation at C3-4, and

radiculopathy bilateral at C3-4. Finally, Mr. Zahiri suffers from hearing loss and Post-Traumatic Stress Disorder. These injuries, in addition to the distress Mr. Zahiri suffers because of noises of pyrotechnics from Afghanistan resulted in Dr. Halili concluding that Mr. Zahiri is "unable to work" on June 17, 2019.

64.    During the period that Mr. Zahiri suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Zahiri's paychecks under the CIGNA policy:

In other words, at the time of Mr. Zahiri's injuries, Mr. Zahiri was insured through his employer by CIGNA

65.    After Mr. Zahiri sustained disabling injuries, he submitted claims to CIGNA for disability coverage on or about February 29, 2024. In that claim form, Mr. Zahiri included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. On July 15, 2024, Mr. Zahiri supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

66.    In April 2024, CIGNA initially communicated regarding Mr. Zahiri's claim, including its false statement that Mr. Zahiri's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Zahiri's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

67.    Ultimately, CIGNA issued a partial payment to Zahiri but limited his coverage under the policy to payments prior to October 29, 2019. In making this inaccurate determination, CIGNA ignored that Mr. Zahiri was disabled as defined by the policy – meaning, he was unable to perform the material duties of his occupation, including the material duties of any occupation for which he is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

68.    Due to CIGNA's bad faith denial of payment of Mr. Zahiri's benefits, Mr. Zahiri has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Zahiri's insurance coverage, and/or failing to procure coverage.

**G.  Burhan Limani's injury and insurance claim**

69.    From October 15, 2012, to April 9, 2017, Mr. Limani was employed by AECOM as an inventory technician in Kandahar and Bagram, Afghanistan. During his employment with AECOM, Mr. Limani was exposed to continuous traumatic events in war zones, including frequent

rocket and mortar attacks. Mr. Limani often had to seek shelter in bunkers, wear protective body armor from his sleeping compartment to workplace, and witnessed fatalities.

70.    Mr. Limani was formally released from his contract as of April 9, 2017. On April 22, 2018, Mr. Limani was diagnosed with PTSD as a result of his exposure to traumatic events while employed with AECOM in Afghanistan. As a result of the exposure of these attacks, Mr. Limani's psychological condition physically disabled him, manifesting in anxiousness, lack of concentration, headaches, neck aches, insomnia, and loss of appetite.

71.    On May 10, 2017, Mr. Limani sought treatment for his persistent symptoms. On April 22, 2018, Mr. Limani's treating provider, Dr. Kaciu, placed Mr. Limani on a work restriction due to the effect of Mr. Limani's symptoms on his functionality. In addition, Mr. Limani suffers hearing loss at a 36.9% impairment rating.

72.    During the period that Mr. Limani suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Limani's paychecks under the CIGNA policy.



In other words, at the time of Mr. Limani's injuries, Mr. Limani was insured through his employer by CIGNA.

73. After Mr. Limani sustained disabling injuries, he submitted claims to CIGNA for disability coverage on or about February 29, 2024. In that claim form, Mr. Limani included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Limani supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

74. In April 2024, CIGNA initially communicated regarding Mr. Limani's claim, including its false statement that Mr. Limani's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Limani's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

75. Ultimately, CIGNA issued a partial payment to Limani for a period of two years – specifically the period of October 4, 2017, through October 3, 2019 – but limited coverage under the policy after that period. In making this inaccurate determination, CIGNA wrongfully asserted that the "Mental or Nervous Disorders" limitation applied to Mr. Limani's claim. In wrongfully limiting coverage, CIGNA ignored that Post-Traumatic Stress Disorder is not listed among the limited conditions in the policy. Likewise, CIGNA also ignored that the policy does not define "mental illness," much less include a definition that would encompass Mr. Limani's injuries. Furthermore, CIGNA ignored that Limani's injuries occurred from trauma-induced, physical injuries caused by external wartime events, not a generic mental or nervous disorder. In addition, Limani's conditions were part of a larger physical event that caused additional physical injuries. As a result, CIGNA acted unreasonably in applying this limitation because under Delaware law,

ambiguities must be resolved in favor of coverage, and limitations must be stated explicitly. Thus, CIGNA improperly utilized this limitation to avoid paying Limani's claims.

76.    CIGNA also ignored that Mr. Limani was disabled as defined by the policy – meaning, he was unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

77.    Due to CIGNA's bad faith denial of payment of Mr. Limani's benefits, Mr. Limani has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Limani's insurance coverage, and/or failing to procure coverage.

**H.  Burim Jashari's injury and insurance claim**

78.    Burim Jashari worked for AECOM as a Heavy Truck Driver at Bagram Airfield in Afghanistan from October 2012 to July 2017. During Mr. Jashari's time employment with AECOM, he was subjected to the horrors of war, including being present for a suicide bombing. This attack killed at least four people including a supervisor named Peter Provost. Jashari, who was already suffering from insomnia and anxiety, mentally deteriorated as he continued to be exposed to these conditions. In December of 2017, Dr. Hoxha diagnosed Mr. Jashari with Post-Traumatic Stress Disorder.

79. On July 9, 2020, Mr. Jashari, who was experiencing tinnitus and hearing loss due to direct exposure to frequent rocket attacks and war hazards, underwent an audiogram. The results indicated that he was suffering from bilateral sensorineural hearing loss and chronic tinnitus.

80. On June 26, 2020, Mr. Jashari saw Dr. Spanca, an ENT, because of his hearing loss. The audiogram results from that visit confirmed that Mr. Jashari had lost 30.9% of his hearing as a result of his employment with AECOM.

81. During the period that Mr. Jashari suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Jashari's paychecks under the CIGNA policy.



In other words, during Mr. Jashari's injuries, Mr. Jashari was covered under the CIGNA insurance policy procured by the AECOM entities.

82. After Mr. Jashari sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Jashari included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the

insurance. In July 2024, Mr. Jashari supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

83. In April 2024, CIGNA initially communicated regarding Mr. Jashari's claim, including its false statement that Mr. Jashari's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Jashari's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

84. Mr. Jashari has not received further correspondence from CIGNA regarding his claim. To be clear, Jashari is covered under the policy because he is unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

85. Due to CIGNA's bad faith denial of payment of Mr. Jashari's benefits, Mr. Jashari has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Jashari's insurance coverage, and/or failing to procure coverage.

## I. **Enver Ramadani's injury and insurance claim**

86. Enver Ramadani began his employment with AECOM in April of 2012, first as a mechanic, then, beginning in July 2016, as a heavy equipment operator. During his employment with AECOM, Mr. Ramadani was exposed to frequent rocket fire that made him fear for his life.

This included being awakened in the middle of the night by ground attacks and rocket attacks and witnessing the preparation of coffins following attacks. These attacks and horrific experiences continued through his employment with AECOM, manifesting in physical symptoms such as fatigue. On September 11, 2017, Dr. Cana, a psychiatrist, stated that Mr. Ramadani is "unable to work."

87.    In addition to the horrors of war, Mr. Ramadani sought medical attention on August 4, 2017, due to strong back pains and neck pain which restricted his movement and rendered walking and bending difficult. Mr. Ramadani was diagnosed with lumboischialgia in both legs, a disc hernia at L4/L5, hypoesthesia, and radiculopathy. Due to his exposure to the explosives of war and heavy military equipment, Mr. Ramadani also suffers a 46.87% hearing loss of the right ear and 60% hearing loss of the left ear.

88.    During the period that Mr. Ramadani suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Ramadani's paychecks under the CIGNA policy.



In other words, at the time of Mr. Ramadani's injuries, Mr. Ramadani was insured through his employer by CIGNA.

Case ID: 260303887

89.    After Mr. Ramadani sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Ramadani included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Ramadani supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

90.    In April 2024, CIGNA initially communicated regarding Mr. Ramadani's claim, including its false statement that Mr. Ramadani's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Ramadani's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

91.    Mr. Ramadani has not received further correspondence from CIGNA regarding his claim. To be clear, Ramadani  is covered under the policy because he is unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

92.    Due to CIGNA's bad faith denial of payment of Mr. Ramadani's benefits, Mr. Ramadani has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Ramadani's insurance coverage, and/or failing to procure coverage.

## J. Fatmir Rexhaj's injury and insurance claim

93.    Mr. Rexhaj worked for AECOM overseas in Afghanistan from August 22, 2012 through November 2018 as a Heavy Equipment Mechanic. Mr. Rexhaj was exposed to cumulative trauma from exposure to a stressful war zone environment and traumatic events during his employment with AECOM, manifesting in Mr. Rexhaj experiencing physically disabling symptoms such as chronic anxiety and sleep issues.

94.    Mr. Rexhaj regularly saw psychiatrist Dr. Halimi due to his persistent symptoms starting on December 17, 2018. Dr. Halimi confirmed that Mr. Rexhaj was unable to work due to the effect of Mr. Rexhaj's symptoms on his functionality.

95.    During the period that Mr. Rexhaj suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Rexhaj's paychecks under the CIGNA policy.



In other words, at the time of Mr. Rexhaj's injuries, Mr. Rexhaj was insured through his employer by CIGNA.

96.     After Mr. Rexhaj sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Rexhaj included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance.  In July 2024, Mr. Rexhaj supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

97.     In April 2024, CIGNA initially communicated regarding Mr. Rexhaj's claim, including its false statement that Mr. Rexhaj's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Rexhaj's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

98.     In August 2025, CIGNA denied Mr. Rexhaj's claim, falsely alleging that he had was not covered under the policy.  Mr. Rexhaj provided paystubs showing that he had paid premiums via his paycheck to AECOM, which were paid to CIGNA in 2018.  CIGNA demanded additional proof of his payroll information from November 25, 2018 – documentation that CIGNA certainly had and documentation it certainly could have obtained from his employer.  Despite this payroll information, CIGNA claimed that it could not determine if Mr. Rexhaj had paid for the policy in his paycheck.  This particularly true where Mr. Rexhaj had paid for these premiums to CIGNA and it had collected the proceeds in 2018. Put simply, CIGNA failed to conduct a reasonable investigation including reviewing its own records and AECOM's records showing that Mr. Rexhaj paid for insurance benefits in 2018.  This is even more true where Mr. Rexhaj provided evidence that he had paid for benefits in August and September of 2018.

99.     In addition, MR. Rexhaj qualified for benefits because he was unable to perform the material duties of his occupation, including the material duties of any occupation for which he

or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

100.    Due to CIGNA's bad faith denial of payment of Mr. Rexhaj's benefits, Mr. Rexhaj has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Rexhaj's insurance coverage, and/or failing to procure coverage.

## K. Faton Gashi's injury and insurance claim

101.    Faton Gashi was employed by AECOM as a heavy equipment mechanic in Afghanistan from September 2011 to March 2017. During his employment, Mr. Gashi experienced the horrors of war in a high stress environment. These terrors included Taliban attacks, rocket attacks, and frequently needing to hide in bunkers in protective gear to avoid injury.

102.    Mr. Gashi's psychological condition physically disabled him, resulting in cardiac injuries due to cumulative exposure to heavy demand employment in a high-stress, war zone environment. These physical conditions include night terrors, anxiety, and depression. On April 24, 2017, Mr. Gashi was diagnosed major depressive disorder and migraines.

103.    In July of 2017, Mr. Gashi's symptoms progressed to also include sleeplessness and concentration difficulties. On November 14, 2017, psychiatrist Dr. Cana confirmed that Mr. Gashi's injuries render him unable to work.

104.    During the period that Mr. Gashi suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Gashi's paychecks under the CIGNA policy.



In other words, at the time of Mr. Gashi's injuries, Mr. Gashi was insured through his employer by CIGNA.

105.    After Mr. Gashi sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Gashi included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Gashi supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

106.    In April 2024, CIGNA initially communicated regarding Mr. Gashi's claim, including its false statement that Mr. Gashi's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Gashi's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

107. In August 2025, CIGNA accepted Mr. Gashi's claim but limited benefits through July 9, 2018. CIGNA asserted both the "limited benefits period for mental or nervous disorders" and has appeared to claim that Mr. Gashi was not disabled under the policy after July 2018.

108. To reach that decision, CIGNA ignored that Gashi was unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

109. Likewise, CIGNA ignored that Post-Traumatic Stress Disorder is not listed among the limited conditions in the policy. CIGNA also ignored that the policy does not define "mental illness," much less include a definition that would encompass Mr. Gashi's injuries. Furthermore, CIGNA ignored that Gashi's injuries occurred from trauma, including physical injuries caused by external wartime events, not a generic mental or nervous disorder. In addition, Gashi's conditions were part of a larger physical event that caused additional physical injuries. As a result, CIGNA acted unreasonably in applying this limitation because under Delaware law, ambiguities must be resolved in favor of coverage, and limitations must be stated explicitly. Thus, CIGNA improperly utilized this limitation to avoid paying Gashi's claims.

110. Due to CIGNA's bad faith denial of payment of Mr. Gashi's benefits, Mr. Gashi has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Gashi's insurance coverage, and/or failing to procure coverage.

**L. Gyner Ismaili's injury and insurance claim**

111.    Mr. Ismaili began working for AECOM in May 2012 as a RTCH/MHE Mechanic until about July 4, 2018. For the majority of Mr. Ismaili's employment, he worked at Bagram Airfield in Afghanistan, except for the last three months, when he worked at Camp Marmal. Mr. Ismaili suffers from bilateral hearing loss and chronic tinnitus as a result of cumulative exposure to injurious stimuli associated with war hazard events throughout his employment in Afghanistan with AECOM.

112.    On September 7, 2021, Mr. Ismaili underwent an audiogram due to his persistent symptoms, which showed he had 37.5% hearing loss in his left ear and 43.13% hearing loss in his right ear. Mr. Ismaili was also diagnosed with Post-Traumatic Stress Disorder as confirmed by Dr. Kaciu. As part of this Mr. Ismaili suffered from headaches, dizziness, appetite loss, concentration loss, and nightmares during the night.

113.    During the period that Mr. Ismaili suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Ismaili's paychecks under the CIGNA policy.



In other words, at the time of Mr. Ismaili's injuries, Mr. Ismaili was insured through his employer by CIGNA.

114.    After Mr. Ismaili sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Ismaili included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Ismaili supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

115.    In April 2024, CIGNA initially communicated regarding Mr. Ismaili's claim, including its false statement that Mr. Ismaili's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Ismaili's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.  Mr. Ismaili has not received further claims correspondence from CIGNA.

116.    To be clear, Ismaili is covered under the policy because he is unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

117.    Due to CIGNA's bad faith denial of payment of Mr. Ismaili's benefits, Mr. Ismaili has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally

acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Ismaili's insurance coverage, and/or failing to procure coverage.

### M. Jeton Jashari's injury and insurance claim

118.    Mr. Jashari worked for AECOM as a mechanic in Afghanistan. Throughout his employment, he was exposed to frequent war-risk hazards and fine particles that led his disability.

119.    Throughout Mr. Jashari's employment, he was frequently exposed to rocket attacks and constantly lived in fear for his life while working for AECOM. In April 2017, Mr. Jashari went on medical leave due to the injuries to his eyes, and the physical manifestations of his experienced trauma, including his headaches, his inability to sleep, and his anxiety. On May 5, 2017, Mr. Jashari was diagnosed with Sleep Disorder. On May 31, 2017, Mr. Jashari was diagnosed with Astigmatism. And, on June 9, 2017, Mr. Jashari underwent LASIK surgery in both eyes.

120.    Starting in September of 2017, Mr. Jashari sought monthly psychiatry treatment due to his experiences during his employment with AECOM. Mr. Jashari was unable to work due to the effect of his symptoms on his functionality.

121.    During the period that Mr. Jashari suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Jashari's paychecks under the CIGNA policy.



In other words, at the time of Mr. Jashari's injuries, Mr. Jashari was insured through his employer by CIGNA.

122.    After Mr. Jashari sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Jashari included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Jashari supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

123.    In April 2024, CIGNA initially communicated regarding Mr. Jashari's claim, including its false statement that Mr. Jashari's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Jashari's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

124.    In August 2025, CIGNA denied Mr. Jashari's claim, falsely alleging that he had suffered no disabling conditions under the policy. To reach that decision, CIGNA ignored that Jashari was unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

125.    Due to CIGNA's bad faith denial of payment of Mr. Jashari's benefits, Mr. Jashari has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally

Case ID: 260303887

acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Jashari's insurance coverage, and/or failing to procure coverage.

**N.** **Naser Rrahmani's injury and insurance claim**

126.    Mr. Rrahmani began working for AECOM in July of 2012 as a mechanic and ceased working for AECOM in April of 2016. Generally, there were constant rocket and mortar attacks on base. Some rocket attacks were extremely close to Mr. Rrahmani when they hit – as close as 30 meters, covering him in sand and dust and debris from the explosion.

127.    Mr. Rrahmani's experience of these horrific events manifested physically with anxiety, tension, neck pains, dizziness, and insomnia. Mr. Rrahmani started seeing a neuropsychiatrist on February 28, 2017, due to his persistent symptoms. On July 3, 2017, Dr. Hoxha, Mr. Rrahmani's treating neuropsychiatrist, noted that Mr. Rrahmani was unable to work due to his disabling injuries.

128.    During the period that Mr. Rrahmani suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Rrahmani's paychecks under the CIGNA policy.



In other words, at the time of Mr. Rrahmani's injuries, Mr. Rrahmani was insured through his employer by CIGNA. After Mr. Rrahmani sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Rrahmani included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Rrahmani supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

129.   In April 2024, CIGNA initially communicated regarding Mr. Rrahmani's claim, including its false statement that Mr. Rrahmani's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Rrahmani's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

130.   Mr. Rrahmani has not received further correspondence from CIGNA regarding his claim. To be clear, Rrahmani is covered under the policy because he is unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

131.   Due to CIGNA's bad faith denial of payment of Mr. Rrahmani's benefits, Mr. Rrahmani has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Rrahmani's insurance coverage, and/or failing to procure coverage.

Case ID: 260303887

## O. **Ramiz Ukshini's injury and insurance claim**

132.    Mr. Ukshini worked for AECOM as a mechanic at FOB Arian and then Bagram Airbase in Afghanistan for nearly 7 years, from March 2, 2012, through January 22, 2019.

133.    On October 29, 2018, while working at Bagram, Mr. Ukshini sustained a spider bite to his right hand/wrist from which he suffered an allergic reaction and was admitted to TMH Medical overnight for observation. Mr. Ukshini developed a blood clot in his right forearm and gastric issues due to an infection related to the spider bite, and he returned to TMH Medical for additional treatment in January of 2019. On January 22, 2019, Mr. Ukshini was placed on medical leave and returned to Kosovo to obtain further treatment for the complications arising from the October 2018 spider bite.

134.    Throughout Mr. Ukshini's employment with AECOM, Mr. Ukshini often experienced rocket attacks, fatalities, and explosions from landmines. Mr. Ukshini's psychological issues manifested in disabling physical symptoms such as experienced nightmares, sleep difficulty, anxiety and breathing issues. On January 28, 2019, Mr. Ukshini sought treatment from psychiatrist Dr. Halimi, who confirmed that Mr. Ukshini was restricted from returning to work.

135.    During the period that Mr. Ukshini suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Ukshini's paychecks under the CIGNA policy.



In other words, at the time of Mr. Ukshini's injuries, Mr. Ukshini was insured through his employer by CIGNA.

136.    After Mr. Ukshini sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Ukshini included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance.  In July 2024, Mr. Ukshini supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

137.    In April 2024, CIGNA initially communicated regarding Mr. Ukshini's claim, including its false statement that Mr. Ukshini's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Ukshini's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

138.    Mr. Ukshini has not received further correspondence from CIGNA regarding his claim. To be clear, Ukshini is covered under the policy because he is unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

139.    Due to CIGNA's bad faith denial of payment of Mr. Ukshini benefits, Mr. Ukshini has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally

acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Ukshini's insurance coverage, and/or failing to procure coverage.

**P.   Salih Osmani's injury and insurance claim**

140.   Mr. Osmani worked for AECOM as a security guard at Bagram from December of 2011 until April of 2017. During his employment with AECOM, Mr. Osmani was subjected to the horrors of war and was diagnosed in August of 2017 with arterial hypertension and Sleep Disorder. Mr. Osmani's Post-Traumatic Stress Disorder manifested in panic attacks, headaches, racing heartbeats, and breathing problems while he suffered from recurring flashbacks of rocket attacks and bunker shelters in Afghanistan.

141.   Mr. Osmani also sustained hearing loss from cumulative exposure rocket attacks and other war hazard events. On June 29, 2020, Mr. Osmani sought an audiogram which measured binaural impairment of 43.75%.

142.   During the period that Mr. Osmani suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Osmani's paychecks under the CIGNA policy.



In other words, at the time of Mr. Osmani's injuries, Mr. Osmani was insured through his employer by CIGNA.

143.    After Mr. Osmani sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Osmani included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Osmani supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

144.    In April 2024, CIGNA initially communicated regarding Mr. Osmani's claim, including its false statement that Mr. Osmani's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Osmani's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

145.    Mr. Osmani has not received further correspondence from CIGNA regarding his claim. To be clear, Osmani is covered under the policy because he is unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

146.    Due to CIGNA's bad faith denial of payment of Mr. Osmani benefits, Mr. Osmani has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally

acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Osmani's insurance coverage, and/or failing to procure coverage.

**Q. Shpejtim Sherifi's injury and insurance claim**

147. Mr. Sherifi worked for AECOM as a mechanic and heavy equipment driver starting in April 2012. Due to the time spent in Afghanistan, Mr. Sherifi suffers from anxiety, depression, irritability, anger, and sleeping disorder. On September 11, 2017, Mr. Sherifi was diagnosed with mood disorder and sleeping disorder.

148. On November 2, 2017, Mr. Sherifi's symptoms had progressed, including headaches, dizziness, sweating, fast heartbeats, difficulties breathing and feeling weak. Mr. Sherifi's symptoms continued to show no improvement and on December 1, 2017, Dr. Hoxha confirmed that Mr. Sherifi was unable to work due to the effect of his symptoms on his functionality.

149. During the period that Mr. Sherifi suffered his disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Mr. Sherifi's paychecks under the CIGNA policy.



In other words, at the time of Mr. Sherifi's injuries, Mr. Sherifi was insured through his employer by CIGNA.

150.    After Mr. Sherifi sustained disabling injuries, he submitted claims to CIGNA for disability coverage. In that claim form, Mr. Sherifi included detailed claim information, medical records, his DBA claim details, his employment agreement, and evidence that he paid for the insurance. In July 2024, Mr. Sherifi supplemented his claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

151.    In April 2024, CIGNA initially communicated regarding Mr. Sherifi's claim, including its false statement that Mr. Sherifi's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Mr. Sherifi's claim was improper because he, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

152.    Mr. Sherifi has not received further correspondence from CIGNA regarding his claim. To be clear, Sherifi is covered under the policy because he is unable to perform the material duties of his occupation, including the material duties of any occupation for which he or she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of his indexed earnings from working in his occupation. This is based on the limitations confirmed by his treating physician and the information regarding his employment that he disclosed to CIGNA.

153.    Due to CIGNA's bad faith denial of payment of Mr. Sherifi benefits, Mr. Sherifi has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally

Case ID: 260303887

acted with oppression, fraud, and malice by denying his claim, misrepresenting Mr. Sherifi's insurance coverage, and/or failing to procure coverage.

## R. Vlora Paqarizi's injury and insurance claim

154. Ms. Paqarizi was hired by AECOM in March of 2018 as a material coordinator. Her job duties included receiving materials for the military, and then packing and shipping them to camps within Bagram and outside of Bagram and sometimes back to the US.

155. Throughout Ms. Paqarizi's employment with AECOM, she often experienced rocket attacks, being close to strike locations, and having to take shelter in bunkers with PPE. This resulted in Ms. Paqarizi being diagnosed with major depressive disorder, Sleep Disorder, generalized anxiety disorder, PTSD, and social phobia.

156. On May 17, 2019, Ms. Paqarizi saw a psychologist who issued a four-page narrative report which described her complaints as "physical stupor and extremities numbness, great sleeping problems, repeated anxieties… sweating and torments while sleeping… loss of appetite… loss of will for everything." Ms. Paqarizi was unable to work due to the effect of her symptoms on her functionality.

157. During the period that Ms. Paqarizi suffered her disabling injuries, the AECOM entities deducted payment for long-term disability insurance from Ms. Paqarizi's paychecks under the CIGNA policy.



In other words, at the time of Ms. Paqarizi's injuries, Ms. Paqarizi was insured through her employer by CIGNA.

158.    After Ms. Paqarizi sustained disabling injuries, she submitted claims to CIGNA for disability coverage. In that claim form, Ms. Paqarizi included detailed claim information, medical records, her DBA claim details, her employment agreement, and evidence that she paid for the insurance. In July 2024, Ms. Paqarizi supplemented her claim with a disability questionnaire response, additional medical records, and other information requested by CIGNA.

159.    In April 2024, CIGNA initially communicated regarding Ms. Paqarizi's claim, including its false statement that Ms. Paqarizi's claim was untimely – a claim inconsistent with long-established Delaware law. In July 2024, CIGNA again asserted that Ms. Paqarizi's claim was improper because she, along with other foreign nationals working for GSS and AC First, was not eligible for benefits or covered by the CIGNA policy.

160.    Ms. Paqarizi has not received further correspondence from CIGNA regarding her claim. To be clear, Paqarizi is covered under the policy because she is unable to perform the material duties of her occupation, including the material duties of any occupation for which she is, or may reasonably become qualified based on education training or experience, and unable to earn 80% or more of her indexed earnings from working in her occupation. This is based on the limitations confirmed by her treating physician and the information regarding her employment that she disclosed to CIGNA.

161.    Due to CIGNA's bad faith denial of payment of Ms. Paqarizi benefits, Ms. Paqarizi has suffered significant economic damage, humiliation, worry, distress, pain and suffering, worsened physical condition, and continuing economic and physical damage. CIGNA additionally

Case ID: 260303887

acted with oppression, fraud, and malice by denying her claim, misrepresenting Ms. Paqarizi's insurance coverage, and/or failing to procure coverage.

## S.  CIGNA's false claim of untimely notice

162.    Each of the Plaintiffs asserted their claim on or about February 29, 2024. On or about April 2, 2024, CIGNA, via an adjuster in Cleveland, Ohio, sent a letter to Plaintiffs falsely asserting that the claims were untimely under the policy. Specifically, CIGNA stated:

> LINA would like to understand your position as to why your delayed notice and proof of loss is reasonable.  Notice is many years after the claimed dates of disability.  Depending on the reason for the delay, LINA reserves its right to deny the claim without further investigation.
> You must provide a written explanation for each claim explaining why you think each late submission is reasonable under the circumstances. If we do not receive a response, we will base any decision we make on the available information.
>
> LINA's request for this information should not be considered as a waiver of any rights or defenses whether contractual, statutory, or under the common law, including its right to deny the claim due to lack of eligibility, untimely notice, or failure to provide adequate proof of loss. This request is made without prejudice to any terms and conditions under the policy, whether or not specifically mentioned herein.

163.    In support of this position, LINA cited to the provisions regarding "proof of loss" and the "notice of claim" in the insurance policy. In effect, LINA was attempting to assert untimeliness of the notice of the claim as a basis to deny coverage. On April 30, 2024, Plaintiffs responded to this claim with the following:

> Each claim has been submitted to LINA under appropriate circumstances. A key consideration, which imposes duties on LINA is that the AECOM's plan "is issued in Delaware and shall be governed by its laws." Delaware has "rejected the concept that the mere passage of time creates the kind of prejudice which bars recovery against an insurer." Falcon Steel Co. v. Maryland Cas. Co., 366 A.2d 512, 518 (Del. Super. Ct. 1976) (citing State Farm Mut. Auto. Ins. Co. v. Johnson, 320 A.2d 345 (Del. 1974). More specifically, the Delaware Supreme Court has held that an insured's failure to provide timely notice as required by the policy, without prejudice to the insurer, is insufficient to relieve the insurer's coverage obligation for a claim that would otherwise fall within the policy. Johnson, 320 A.2d

345.Under Delaware law the burden of showing prejudice is on the insurer. See, e.g., Nationwide Mut. Ins. Co. v. Starr, 575 A.2d 1083 (Del. 1990); Falcon Steel, 366 A.2d 512; Wilhelm v. Nationwide Gen. Ins. Co., No. 09C-07-155, 2011 WL 4448061 (Del. Super. Ct. May 11, 2011). Given the clarity of law in Delaware, unless LINA can show that it has been prejudiced by the insureds' alleged breach of the notice provision, it cannot deny the claims due to "untimely notice."

164.    Despite this, CIGNA still asserted this "untimeliness" as an improper basis to deny claims made by Plaintiffs.

## T. CIGNA's false claim that Policy does not cover Plaintiffs and other foreign nationals working for GSS and AC First

165.    As part of its revolving excuses for denial – each of which is in bad faith and unreasonable – in June 2024 CIGNA asserted that Plaintiffs were not covered under the policy as foreign employees. Specifically, it claimed in correspondence to Plaintiffs' legal representative the following: "At this time, we have received confirmation from your Employer that you were part of the GSS and third country nationals, and would not be benefit eligible. Therefore, you are not eligible to receive Long-term disability benefits under the above mentioned policy."

166.    This was a false representation of the policy. Undisputedly, the claimants are covered by the policy because it provides long-term disability coverage for classes employees working for AECOM and its affiliates, including AECOM GSS or AC First. Indeed, the only condition listed for the insureds to be eligible for insurance is that "For eligibility purposes, an Employee is an employee of the Employer in one of the `Classes of Eligible Employees.'" The Schedule of Benefits lists eight classes of eligible employees. The claimants are Class 2 employees. Class 2 covers all active employees of the Employer (AECOM GSS or AC First) who regularly worked for at least 20 hours per week, which they did. As a result, the policy provided coverage to employees, like Claimants, who worked for either AC First or, nominally, for GSS. Even more clear, Plaintiffs paid monthly out of their paycheck for long-term disability coverage

with CIGNA. In addition, the policy contains no exclusion for non-US citizens. Thus, there was no basis for asserting that the insureds were not eligible because they were Kosovars employed by a US military contractor in Afghanistan. This statement was a misrepresentation of fact and made in bad faith.

## U. **CIGNA's improper use of the mental disorder limitation to avoid paying claims to Plaintiffs**

167.    As its third attempt to avoid coverage, CIGNA has also asserted that the "Mental or Nervous Disorders" limitation from the policy limited coverage to 24 months. This provision stated the following:

Limited Benefit Periods for Mental or Nervous Disorders

"The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions.

Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions. 1) Anxiety disorders 2) Delusional (paranoid) disorder 3) Depressive disorders 4) Eating disorders 5) Mental Illness 6) Somatoform disorders (psychosomatic Illness).

168.    In asserting this limitation, CIGNA ignored that Post-Traumatic Stress Disorder is not listed among the limited conditions in the policy. Likewise, CIGNA also ignored that the policy does not define "mental illness," much less include PTSD as a part of this provision. Furthermore, CIGNA ignored that Plaintiffs' injuries occurred from a trauma-induced, physical injury caused by external wartime events, not a generic mental or nervous disorder. In addition, Plaintiffs' conditions were part of a larger physical event that caused additional physical injuries. As a result, CIGNA acted unreasonably in applying this limitation because under Delaware law, ambiguities must be resolved in favor of coverage, and limitations must be stated explicitly. Thus, CIGNA improperly utilized this limitation to avoid paying Plaintiffs' claims.

## IV.    LACK OF ERISA PREEMPTION

169.    As previously stated, Plaintiffs are foreign nationals living in the Republic of Kosovo. Indeed, this was one of the purported reasons CIGNA denied coverage for long-term disability.[1]

170.    While ERISA generally preempts state laws that relate to employee benefit plans, ERISA does not apply to this lawsuit, which arises from the insurance claims of foreign employees who worked in a foreign country. As explained by the Supreme Court, "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"[2] Within the ERISA statute, Congress did not provide a clear intent of applying ERISA extraterritorially, and "ERISA does not contain any explicit language clearly expressing extraterritorial reach."[3] Instead, ERISA is "inherently domestic in nature, as the plans must be 'established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce.'"

171.    Under nearly identical factual circumstances, the Eastern District of Pennsylvania in Bajrami and Reliance addressed an insurer's carrier's claim of ERISA application and a motion to remand. The Court granted the Plaintiffs' motions to remand and found that ERISA did not apply extraterritorially to foreign workers in a foreign country.[4] Just like Plaintiffs here, the Reliance plaintiffs were residents of the Republic of Kosovo who worked in Afghanistan for

---

[1] CIGNA has alleged various bad faith bases for the denial of coverage for Plaintiffs long-term disability, one of them being Plaintiffs' status as foreign nationals.

[2] *EEOC. v. Arabian Am. Oil Co.*, 499 US 244, 248 (1991) (quoting *Foley Bros., Inc. v. Filardo*, 336 US 281, 285 (1949); *see also ARC Ecology v. U.S. Dept. of Air Force*, 411 F3d 1092, 1097 (9th Cir 2005) ("Courts must assume that Congress legislates with knowledge of the presumption that a statute 'is primarily concerned with domestic conditions.'").

[3] *In re Reliance Standard Life Insurance*, 386 F. Supp. 3d 505, 511 (E.D. Pa. 2019); *See also Bajrami v. Reliance Standard Life Insurance Co.* 334 F. Supp. 3d 659 (E.D. Pa. 2018); *Chong v. InFocus Corp.* CV-08-500-ST, 2008 WL 5205968, 2008 U.S. Dist. LEXIS 103527 (D. Or. Oct. 24, 2008).

[4] *In re Reliance Standard Life Insurance*, 386 F. Supp. 3d at 508. (citing *Bajrami.* 334 F. Supp. 3d 659).

AECOM/GSS. The only difference between Reliance and this case – the Reliance plaintiffs suffered under coverage with a different disability carrier.

172. In addressing this exact policy, the Central District of California also found that ERISA does not apply.[5]

## V.    COUNT ONE – BREACH OF CONTRACT

173. Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein. Plaintiffs and their employers paid all the premiums and performed all obligations imposed upon them under CIGNA Policies.

174. CIGNA had a duty under CIGNA Policy to pay long-term disability benefits to Plaintiffs. Plaintiffs met all the requirements for disability coverage under the policy and met each condition precedent for coverage. In breach of this obligation, CIGNA closed and denied Plaintiffs' claims. Indeed, CIGNA has disclaimed the existence of a contract between CIGNA and Plaintiffs.

175. As a direct and proximate result of the CIGNA's failure and refusal to provide Plaintiffs with long-term disability benefits, related action, Plaintiffs will be damaged in the amount of their benefits owed under the CIGNA policy. In addition, because CIGNA has disclaimed the contract entirely, Plaintiffs are entitled to acceleration of future benefits owed under the contract. Plaintiffs have further suffered additional consequential damages in an amount to be proven at the time of trial, including emotional distress and pain and suffering.

## VI.    COUNT TWO – FRAUD

176. Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein.

---

[5] *Ymeri v. Life Ins. Co.*, 2:21-cv-01491-VAP-JPRx , 2021 U.S. Dist. LEXIS 76823 (C.D. Cal. April 20, 2021)

177. The CIGNA knowingly and intentionally made misrepresentations and false promises that they would procure, and in fact had procured, the CIGNA Policy.

178. Despite these representations, CIGNA knew that Plaintiffs were not covered under the CIGNA policy because they were "not deemed...employee[s] under the Long-term disability Plan." CIGNA knew and intended that their false statements regarding coverage would induce reliance on the part of Plaintiffs, and in particular, that Plaintiffs would continue to work in hazardous conditions in Afghanistan and CIGNA would collect payment for the coverage from their wages.

179. Plaintiffs reasonably relied on CIGNA's false representations. Had Plaintiffs known the truth, Plaintiffs would either not have worked for the AECOM entities in hazardous conditions in Afghanistan or would have taken appropriate measures to ensure that it obtained insurance coverage similar to the coverages and limits of CIGNA policy.

180. As a direct and proximate result of CIGNA's misconduct, Plaintiffs have been damaged in an amount to be determined by proof at trial.

181. CIGNA acted with oppression, fraud, or malice by disregarding, without justification, Plaintiffs' rights and have refused to fulfill their duties, thereby exposing Plaintiffs to unreasonable risk. Accordingly, Plaintiffs are entitled to exemplary damages in an amount to be proven at the time of trial.

## VII.    COUNT THREE – CONSPIRACY TO COMMIT FRAUD

182. Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein.

183. CIGNA, along with AECOM, AC First, GSS, and others, combined with a common purpose to commit fraud and deceive Plaintiffs. CIGNA committed covert acts, as described

Case ID: 260303887

above, in furtherance of the common purpose. Indeed, CIGNA and AECOM knowingly and intentionally made misrepresentations and false promises that they would procure, and in fact had procured, the CIGNA Policy.

184.    Despite these representations, CIGNA knew that Plaintiffs were not covered under the CIGNA policy because they were "not deemed…employee[s] under the Long-term disability Plan." CIGNA knew and intended that their false statements regarding coverage would induce reliance on the part of Plaintiffs, and in particular, that Plaintiffs would continue to work in hazardous conditions in Afghanistan and CIGNA would collect payment for the coverage from their wages.

185.    Plaintiffs reasonably relied on CIGNA's false representations.  Had Plaintiffs known the truth, Plaintiffs would either not have worked for the AECOM entities in hazardous conditions in Afghanistan or would have taken appropriate measures to ensure that it obtained insurance coverage similar to the coverages and limits of CIGNA policy.

186.    As a direct and proximate result of CIGNA's misconduct, Plaintiffs have been damaged in an amount to be determined by proof at trial.

187.    CIGNA acted with oppression, fraud, or malice by disregarding, without justification, Plaintiffs' rights and have refused to fulfill their duties, thereby exposing Plaintiffs to unreasonable risk. Accordingly, Plaintiffs are entitled to exemplary damages in an amount to be proven at the time of trial.

## VIII.    COUNT FOUR – NEGLIGENT MISREPRESENTATION

188.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein.

Case ID: 260303887

189.   CIGNA made misrepresentations regarding its long-term disability coverage Policy. Specifically, CIGNA represented that Plaintiffs, as foreign nationals, were "not deemed… employee[s] under the Long-term disability Plan." Similarly, CIGNA represented that "foreign international employees are not covered under the policy." In addition, prior to their misrepresentations, CIGNA had previously claimed that they needed more information and documentation to prove Plaintiffs' disability status.   And only after receiving additional documentation, CIGNA claimed that Plaintiffs were not covered by the policy.

190.   CIGNA should have known that Plaintiffs were covered under the CIGNA policy because (1) AECOM had deducted payment for the plan from Plaintiffs' wages and (2) AECOM had identified that CIGNA insured foreign nationals, like Plaintiffs, in the benefits summaries.

191.   CIGNA knew or should have known that its false statements regarding coverage would induce reliance on the part of Plaintiffs, and in particular, that (1) Plaintiffs' benefits have been unnecessarily delayed for months, (2) Plaintiffs required to file this lawsuit, (3) Plaintiffs retained additional counsel to represent them to obtain these benefits, and (4) CIGNA unnecessarily delayed benefits by requesting additional information, knowing that they intended to misrepresent coverage and lull Plaintiffs to believe that the claims would be covered.

192.   As a direct and proximate result of CIGNA's misconduct, Plaintiffs have been damaged in an amount to be determined by proof at trial.

## IX.   COUNT FIVE – BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

193.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein.

194.   CIGNA, as Plaintiffs' insurer, had a duty to deal fairly and in good faith with Plaintiffs in the processing of their long-term disability claims. CIGNA breached this duty by

refusing to properly investigate and denying necessary care and other benefits without any reasonable basis to do so. CIGNA knew or should have known that there was no reasonable basis for denying or delaying the required benefits.

195.    CIGNA's acts and omissions include, but are not limited to, the following:

a.    Unreasonably denying coverage to Plaintiffs under the terms of the CIGNA Policy upon Plaintiffs' submission of long-term disability claims;

b.    Failing to adopt and implement reasonable standards for the prompt investigation and processing of insurance claims;

c.    Failing to promptly and properly investigate all of the facts and circumstances alleged in Plaintiffs' claims before denying coverage under the CIGNA policy;

d.    Failing to promptly and properly investigate all of the facts and circumstances regarding whether Plaintiffs qualified as employees covered by the CIGNA policy;

e.    Misrepresenting to Plaintiffs the coverage afforded to them under the CIGNA Policy and concealing from it benefits that should have been afforded to Plaintiffs as the insureds;

f.    Interpreting policy terms in an unreasonable manner, solely in an effort to avoid providing insurance policy benefits to Plaintiffs for which they paid and were entitled to under the CIGNA Policy;

g.    Failing to provide promptly a reasonable explanation of the basis relied on in the CIGNA Policy, in relation to the facts or applicable law, for the denial of the claims;

h.    Acting contrary to CIGNA's own operating manuals, claims manuals, and written guidelines for claims handling;

i.    Establishing and following a claims review procedure that was calculated and intended at the outset to "justify" the denial of Plaintiffs' claims;

j.    Failing and refusing to affirm or deny coverage within a reasonable time after receiving Plaintiffs' claims for benefits;

k.    Unjustly enriching itself at Plaintiffs' expense by refusing to accept Plaintiffs' claims;

196.    Plaintiffs reserve the right to assert, allege and prove additional bad faith acts and omissions by CIGNA, as they are uncovered in the course of discovery or investigation.

197.    As a direct and proximate result of CIGNA's tortious breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered extensive damages and are entitled to the amount of the benefits owed in the policy. Because CIGNA has disclaimed the contract entirely, Plaintiffs are also entitled to acceleration of future benefits.

198.    As a further direct, proximate and legal result of the foregoing conduct on part of CIGNA, Plaintiffs are entitled to recover additional special and consequential damages in amounts to be proven at the time of trial, including, but not limited to, attorney's fees and costs incurred herein in obtaining the entitled benefits under the CIGNA Policy. Plaintiffs have further suffered emotional distress, worsened physical condition, and additional financial harm.

199.    CIGNA has acted with oppression, fraud, or malice by disregarding, without justification, Plaintiffs' rights under the Policy and have refused to fulfill their duties, thereby exposing Plaintiffs to unreasonable risk. Accordingly, Plaintiffs are entitled to exemplary damages in an amount to be proven at the time of trial.

200.    CIGNA's conduct, as described in this complaint, was undertaken by its officers or managing agents who were responsible for claims operations, underwriting, communications, and decisions. The conduct of the managing agents and individuals was therefore undertaken on behalf of CIGNA. Further, CIGNA had advanced knowledge of the actions and conduct of those individuals, whose actions and conduct were ratified, authorized, and approved by managing agents and by other corporate officers, directors, or managing agents.

## X.    COUNT SIX – PROMISSORY ESTOPPEL

201.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein.

202.    During Plaintiffs' employment with the AECOM entities, CIGNA accepted long-term insurance disability coverage and benefits premiums through deduction from Plaintiffs' wages. Based on the nature and location of the work Plaintiffs agreed to perform, it was reasonably foreseeable that Plaintiffs would rely on their promise of disability insurance benefits. Indeed, Plaintiffs did in fact substantially rely to their detriment on CIGNA's continuous acceptance of their payment premiums to provide such benefits and have suffered injuries as a result of CIGNA's failure to provide benefits.

## XI.    COUNT SEVEN – NEGLIGENCE

203.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein.

204.    As insurers, CIGNA and its agents were obligated to use such knowledge, skill, and reasonable care that others commonly possess or exercise in the same or similar circumstances. This includes, inter alia, a duty to use reasonable care, diligence, and judgment in procuring the insurance as requested by their insureds.

205.    CIGNA and its agents breached this duty by failing to obtain and/or provide the insurance coverage that was requested and paid for by Plaintiffs; and by failing to disclose the failure to obtain and/or provide insurance.

206.    CIGNA and its agents had a duty to communicate accurate information to Plaintiffs, who, here, relied on CIGNA to provide long-term disability insurance, while they worked in hazardous conditions in Afghanistan.

207.    CIGNA and its agents misrepresented that they had procured such insurance, which appears to have been false, and with the intent to induce Plaintiffs and their employer, to rely on this falsity to keep premiums, and to solicit further premiums from Plaintiffs' employers.

208.    Plaintiffs were ignorant of the truth and justifiably relied upon these misrepresentations, resulting in significant damages to Plaintiffs, as well as severe mental anguish, emotional distress, and physical harm to Plaintiffs.

209.    Among other actions and inactions, the CIGNA breached their duty to use reasonable care through their:

a.    negligently failing to provide coverage for third-country nationals, like Plaintiffs, despite Plaintiffs paying for benefits through withholding of their wages;

b.    failure to perform audits of the AECOM entities and GSS prior to Plaintiffs' disabling injuries; and

c.    failure to maintain and enforce a proper system of internal supervision to monitor the activities of their agents.

210.    As a direct and proximate result of CIGNA's breach of these duties, Plaintiffs have been damaged in an amount to be proven at trial.

## XII.   PUNITIVE DAMAGES

211.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs above as if fully set forth herein.

212.   CIGNA acted intentionally, fraudulently, and with malice (as the term is legally defined) in denying Plaintiffs claims for long-term disability benefits.

213.   CIGNA's conduct constituted aggravated, malicious, and outrageous conduct in conscious disregard to Plaintiffs' rights, physical health, and financial condition. CIGNA had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages in excess of fifty thousand dollars ($50,000), together with interest, delay damages, costs, and such other relief as this Court deems appropriate, and bring this action to recover the same. Plaintiffs demand judgment be entered in their favor against Defendant and an award for damages as follows:

a.   For compensatory damages for physical pain and suffering, mental and emotional distress, anxiety, and all other general damages alleged and proven at the time of trial;

b.   Punitive and exemplary damages in an amount appropriate to punish and set an example of CIGNA, and in such an amount that will discourage CIGNA and others from such conduct against other insureds in the future;

c.   Recovery of expert witness fees;

d.   Recovery of attorney's fees;

e.   Taxable costs incurred herein;

f.   Pre-and post-judgment interest; and

Case ID: 260303887

g.    For all such other and further relief, at law and or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

Sarah O. Schindler, Esq.
**Kolsby, Gordon, Robin & Shore**
2000 Market Street, 28th Floor
Philadelphia, PA 19103
sschindler@kolsbygordon.com
*Attorney for Plaintiffs*

## VERIFICATION

I, ABDULLA AJETI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
ABDULLA AJETI

DATE: 03/17/2026

## <u>VERIFICATION</u>

I, ARBEN SOPAJ, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

ARBEN SOPAJ

DATE: _17. 03. 2026_

## VERIFICATION

I, ARJAN RAMADANI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
ARJAN RAMADANI

DATE: 03-17-2026

## VERIFICATION

I, AVNI MEHMETI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
AVNI MEHMETI

DATE: 03-17-2026

## VERIFICATION

I, BEKIM ZAHIRI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____

BEKIM ZAHIRI

DATE: 03 / 18 / 2026

## VERIFICATION

I, BURHAN LIMANI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
BURHAN LIMANI

DATE: 03/17/2026

## VERIFICATION

I, BURIM JASHARI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
BURIM JASHARI

DATE: 03. 18. 2026

Case ID: 260303887

## VERIFICATION

I, ENVER RAMADANI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

ENVER RAMADANI

DATE: 03.18.2026

## VERIFICATION

I, FATMIR REXHAJ, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge. information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
FATMIR REXHAJ

DATE: 03 - 17 - 2026

## VERIFICATION

I, FATON GASHI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
FATON GASHI

DATE 03-18-2026

## VERIFICATION

I, GYNER ISMAILI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

GYNER ISMAILI

DATE: 17/03/2026

## VERIFICATION

I, JETON JASHARI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

JETON JASHARI

DATE: 17. 03. 2026

**VERIFICATION**

I, NASER RRAHMANI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

NASER RRAHMANI

DATE: 03-17-2026

Case ID: 260303887

## VERIFICATION

I, RAMIZ UKSHINI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

RAMIZ UKSHINI

DATE: 03.17.2026

Case ID: 260303887

## VERIFICATION

I, SALIH OSMANI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

SALIH OSMANI

DATE: 03 - 17 - 2026

Case ID: 260303887

## VERIFICATION

I, SHPEJTIM SHERIFI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief.  The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

_____
SHPEJTIM SHERIFI

DATE: 17-MAR-2026

Case ID: 260303887

**VERIFICATION**

I, VLORA PAQARIZI, hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing are true and correct to the best of my knowledge, information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

VLORA PAQARIZI

DATE: 17. MAR. 26.

Case ID: 260303887