IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABDULLA AJETI, et al.,** | **CIVIL ACTION** |
| **Plaintiffs,** | **Case No. 2:26-cv-03249** |
| v. | |
| **LIFE INSURANCE COMPANY OF NORTH AMERICA** | |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION TO DISMISS**

### I.    Summary of the Argument

LINA's Motion to Dismiss is an attempt to relitigate under the guise of Rule 12(b)(6) the jurisdictional question that is already before this Court on Plaintiffs' pending Motion to Remand.[1] LINA's entire argument rests on the premise that ERISA governs these Plaintiffs' claims.[2] That premise is wrong, and courts in this district have said so under nearly identical facts.[3]

This case involves insurance claims by seventeen citizens of the Republic of Kosovo arising from disabling injuries sustained while performing hazardous military support work in Afghanistan.[4] In its Notice of Removal, LINA argued only that ERISA completely preempts

---

[1] *See* Plaintiff's concurrently filed Motion to Remand and Memorandum in Support.

[2] Dkt. 20-1, p. 6 ("Each of these claims is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and therefore must be dismissed with prejudice for failure to state a claim.")

[3] *See Bajrami v. Reliance Standard Life Insurance Co.*, 334 F. Supp. 3d 659 (E.D. Pa. 2018) (Exhibit 2); *In re Reliance Standard Life Insurance Co.*, 386 F. Supp. 3d 505 (E.D. Pa. 2019) (Exhibit 1); *Chong v. InFocus Corp.* CV-08-500-ST, 2008 WL 5205968, 2008 U.S. Dist. LEXIS 103527 (D. Or. Oct. 24, 2008); *Ymeri v. Life Insurance Company of North America*, No. 2:21-cv-01491-VAP-JPRx (C.D. Cal. Apr. 20, 2021) (Exhibit 3).

[4] Dkt. 1-2 (Exhibit B to Defendant's Notice of Removal) ¶¶ 21-22; *See also*, Dkt. 1 (Defendant's Notice of Removal) ¶¶ 1-3.

Plaintiffs' state law claims under § 502(a).[5] Now, in its Motion to Dismiss, LINA has added a second theory of express preemption under ERISA § 514(a).[6] That new argument cannot supply subject matter jurisdiction where none existed at removal, and it fails on its merits in any event.

As confirmed by federal courts throughout the country, including this very district, Congress did not intend for ERISA to apply beyond the territorial jurisdiction of the United States.[7] The Eastern District of Pennsylvania remanded virtually identical cases in *Bajrami v. Reliance Standard Life Insurance Co.*, 334 F. Supp. 3d 659 (E.D. Pa. 2018), and *In re Reliance Standard Life Insurance Co.*, 386 F. Supp. 3d 505 (E.D. Pa. 2019), involving Kosovar employees who worked in Afghanistan for AECOM and GSS — the same corporate structure, the same country, the same class of worker.[8] The Central District of California reached the same result on remand in *Ymeri v. Life Insurance Company of North America*,[9] a case arising from identical injuries under the very same LINA policy at issue here. LINA's motion must be denied.

## II.    Table of Contents

Summary of the Argument.............................................................................................................1

Table of Contents .........................................................................................................................2

Table of Authorities .....................................................................................................................3

---

[5]*See, e.g.* Dkt. 1.

[6] *Compare* Dkt. 1, Defendant's Notice of Removal ¶¶ 1–5 (asserting only complete preemption under 29 U.S.C. § 1132(e)–(f) and § 1331) *with* Dkt. 20-1 pp. 7-19 (raising express preemption under § 514(a), 29 U.S.C. § 1144(a), for the first time).

[7]*See Bajrami v. Reliance Standard Life Insurance Co.*, 334 F. Supp. 3d 659 (E.D. Pa. 2018) (Exhibit 2); *In re Reliance Standard Life Insurance Co.*, 386 F. Supp. 3d 505 (E.D. Pa. 2019) (Exhibit 1); *Ymeri v. Life Insurance Company of North America*, No. 2:21-cv-01491-VAP-JPRx (C.D. Cal. Apr. 20, 2021) (Exhibit 3).

[8] *Compare In re Reliance Standard Life Ins. Co.*, 386 F. Supp. 3d at 507 and *Bajrami*, 334 F. Supp. 3d at 660–61 *with* Dkt. 1-2 (Exhibit B to Defendant's Notice of Removal) ¶¶ 21-29.

[9] *Ymeri v. Life Insurance Company of North America*, No. 2:21-cv-01491-VAP-JPRx (C.D. Cal. Apr. 20, 2021) (Exhibit 3),

Factual and Procedural Background ..................................................................5

Legal Standard ...............................................................................................7

LINA Fails Both Prongs Required to Establish ERISA Complete Preemption .......................7

    I.      ERISA Does Not Apply to Foreign Citizens Who Worked in Foreign Countries and Suffered Injury Outside the Borders of the United States .......................................8

        Step One: The Presumption Against Extraterritorial Application is Not Rebutted ..................................................................................................9

        Step Two: The Case Does Not Present a Domestic Application of ERISA .......9

    II.     Other Independent Legal Duties Support Plaintiffs' Claims ...................................11
    III.    *Yegiazaryan v. Smagin* Does Not Change the Extraterritoriality Analysis..............11

    IV.    Lina's Exemption and Uniformity Arguments Have Already Been Rejected........13

    V.    LINA's Express Preemption Theory Cannot Save the Motion to Dismiss..............15

Conclusion ...................................................................................................16

Certificate of Service.......................................................................................17

### III.    Table of Authorities

<u>**Cases**</u>

*Ashcroft v. Iqbal,,*

    556 U.S. 662 (2009) ......................................................................................7

*Bajrami v. Reliance Standard Life Insurance Co..,*

    334 F. Supp. 3d 659 (E.D. Pa. 2018) ........................................1, 2, 8, 9, 10, 11, 13, 14, 16

*Chong v. InFocus Corp*,

    No. CV-08-500-ST, 2008 WL 5205968, 2008 U.S. Dist. LEXIS 103527 (D. Or. Oct. 24, 2008) ...............................................................................................1, 9, 10

*EEOC v. Arabian Am. Oil Co. ("Aramco"),*

    499 U.S. 244 (1991) ......................................................................................9

*In re Reliance Standard Life Insurance Co,*

    386 F. Supp. 3d 505 (E.D. Pa. 2019) ...........................................1, 2, 8, 9, 10, 11, 13, 16

*Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*,

> 435 B.R. 894 (Bankr. D. Del. 2010) ...............................................................7

*Maurais v. Snyder.,*

> No. 00-2133, 2000 WL 1368024 (E.D. Pa. Sept. 14, 2000) ...........................10

*Morrison v. National Australia Bank Ltd,*

> 561 U.S. 247 (2010) ...............................................................................8, 11, 14

*National Security Systems, Inc. v. Iola.,*

> 700 F.3d 65 (3d Cir. 2012) ......................................................................11, 15

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Insurance Co*,

> 514 U.S. 645 (1995) ......................................................................................15

*Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan,*

> 388 F.3d 393 (3d Cir. 2004) ..........................................................................7, 8

*RJR Nabisco, Inc. v. European Community*,

> 579 U.S. 325 (2016) ......................................................................................8, 9

*WesternGeco LLC v. ION Geophysical Corp,*

> 138 S. Ct. 2129 (2018) ...................................................................................10

*Wolk v. UNUM Life Insurance of America,*

> 186 F.3d 352 (3d Cir. 1999) ...........................................................................14

*Yates v. Hendon,*

> 541 U.S. 1 (2004) ...........................................................................................14

*Yegiazaryan v. Smagin,*

> 599 U.S. 533, 143 S. Ct. 1900 (2023) ................................................11, 12, 13

*Ymeri v. Life Insurance Company of North America*,

> No. 2:21-cv-01491-VAP-JPRx (C.D. Cal. Apr. 20, 2021).....................1, 2, 8, 9, 10, 14, 16

## **Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq .................... passim

29 U.S.C. § 1003(b)(4) ...................................................................................................13

29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)) .............................................. passim

29 U.S.C. § 1132(e)–(f) ...............................................................................................2, 15

29 U.S.C. § 1144(a) (ERISA § 514(a)) .......................................................................2, 15

28 U.S.C. §§ 1331, 1441 ...............................................................................................2, 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1

## IV.    Factual and Procedural Background

Plaintiffs are citizens of the Republic of Kosovo who worked in Afghanistan between approximately 2011 and 2019 as drivers, mechanics, inventory technicians, security guards, and material coordinators on U.S. military support contracts operated by AECOM and its affiliates, AC First LLC and Global Sourcing Solutions ("GSS") (together, the "AECOM entities").[10] To fulfill its U.S. military contracts, the AECOM entities used GSS and AC First LLC to supply labor.[11] Each Plaintiff was nominally employed by GSS but was in actuality an employee of AC First and AECOM.[12] During their employment, Plaintiffs were citizens and residents of the Republic of Kosovo and worked entirely outside the borders of the United States.[13]

As part of their contracts for employment, the AECOM entities represented that they would offer and procure long-term disability insurance for employees working in Afghanistan, including Plaintiffs.[14] Each Plaintiff's contract with GSS included the following: "[i]mmediately upon start

---

[10] Dkt. 1-2 (Exhibit B to Defendant's Notice of Removal) at ¶ 24.
[11] *Id*. at ¶ 25.
[12] *Id*. at ¶ 26.
[13] *Id*. at ¶¶ 1–27.
[14] *Id*. at ¶ 26.

date of this AGREEMENT, the employer will offer to the Employee a benefits plan including: . . . Long Term Disability."[15] AECOM then procured CIGNA/LINA Policy Number FLK-0981093 (the "LINA Policy"), which named AECOM as the subscriber on the policy.[16] The LINA Policy provided long-term disability coverage for employees working for AECOM and its affiliates, and identified "AC First" and "AECOM Global Sourcing Solutions" as affiliates under the policy.[17]

Each Plaintiff suffered disabling injuries such as physical trauma and hearing loss as a direct result of combat conditions at Bagram Airfield, Kandahar, and other Afghan bases.[18] Plaintiffs paid monthly premiums for LINA LTD coverage through payroll deductions taken from their Afghan paychecks.[19] Yet, when Plaintiffs submitted LTD claims to LINA beginning in February 2024, LINA denied them.[20] LI LINA asserted that the claims were untimely, that Plaintiffs were not "employees" covered by the policy, and that benefits were limited by a mental/nervous disorder clause.[21] LINA's correspondence stated explicitly "at this time, we have received confirmation from your Employer that you were part of the GSS and third country nationals, and would not be benefit eligible. Therefore, you are not eligible to receive Long-term disability benefits."[22]

Plaintiffs filed suit in the Philadelphia Court of Common Pleas in March 2026 for Defendant's violations, including its breach of contract, fraud, bad faith, and negligent misrepresentation of Plaintiff's policies.[23] LINA removed this case on May 13, 2026, arguing only

---

[15] *Id.* at ¶ 26.
[16] *Id.* at ¶ 28.
[17] *Id.* at ¶ 28.
[18] *Id.* at ¶¶ 30–161.
[19] *Id.* at ¶ 21.
[20] *Id.* at. ¶¶ 162–168.
[21] *Id.*
[22] *Id.* at ¶ 165.
[23] *See* Dkt. 1-2, p. 4

that ERISA § 502(a) completely preempts Plaintiffs' claims.[24] Plaintiffs have filed a Motion to Remand, which is pending before this Court.[25] LINA also filed the instant Motion to Dismiss, advancing the same ERISA preemption theory as well as an express preemption argument under § 514(a).[26]

### V.    Legal Standard

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[27] Where a defendant's motion to dismiss is premised entirely on federal preemption, the motion necessarily fails when preemption is not established. In other words, a federal court that lacks subject matter jurisdiction cannot rule on the merits of a motion to dismiss.[28] Accordingly, Plaintiffs' Motion to Remand raises a threshold jurisdictional question, because if the Court because if the Court grants that motion, it lacks the jurisdiction to rule on the Motion to Dismiss, rendering it moot. Accordingly, the Court should resolve the remand question first. Not only the Motion to Dismiss, the below analysis confirms that LINA's ERISA preemption theory fails ion its face.

### VI.    LINA Fails Both Prongs Required to Establish ERISA Complete Preemption

To establish ERISA § 502(a) complete preemption, the Third Circuit requires a defendant to satisfy both prongs of a conjunctive test: (1) the plaintiff could have brought the action under § 502(a), and (2) no other independent legal duty supports the plaintiff's claim.[29] LINA cannot

---

[24] Dkt. 1, (Defendant's Notice of Removal), pp. 1-13.

[25] *See* Plaintiff's concurrently filed Motion to Remand and Memorandum in Support.

[26] *See*, Dkt. 20-1.

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[28] *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894, 900 (Bankr. D. Del. 2010) ("If a court lacks subject matter jurisdiction, it is generally barred from taking any action that goes to the merits of the case.")

[29] *Pascack Valley Hosp.*, 388 F.3d at 400.

satisfy this test. First, for the same reasons discussed in *Bajrami*, *In re Reliance*, and *Ymeri*, ERISA's extraterritorial reach does not extend to these Plaintiffs, so Plaintiffs could not have brought their claims under § 502(a). Second, Plaintiff's claims exist independently of the LINA Policy and would exist whether or not any ERISA plan existed.

1. **ERISA Does not apply to foreign citizens, who worked in foreign countries, and suffered injury outside the borders of the United States.**

The first prong of the complete preemption test asks whether Plaintiffs "could have brought" their action under § 502(a).[30] Here, they could not, because ERISA's civil enforcement provision does not extend to foreign nationals employed and injured abroad, nor can it be presumed to do so.[31] Federal courts have long followed the presumption that federal law only "applies within the territorial jurisdiction of the United States."[32] The Supreme Court made explicit: "[w]hen a statute gives no clear indication of an extraterritorial application, it has none."[33] Put differently, "unless there is the affirmative intention of the Congress clearly expressed" to give a statute extraterritorial effect, "we must presume it is primarily concerned with domestic conditions."[34]

Despite that framework, LINA argues in support of its Motion to Dismiss that this case is preempted by ERISA.[35] As a threshold issue, LINA must therefore show that Congress intended ERISA to apply to foreign insurance claims arising out of foreign injury and foreign employment. [36] Plaintiffs address this question under the two-step framework the Supreme Court prescribed in *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337 (2016).

---

[30] *Pascack Valley Hosp*, 388 F.3d at 400

[31] *Arabian Am. Oil Co.*, 499 U.S. at 248.

[32] *Id.*

[33] *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

[34] *Id.* at 255 (citing *Arabian Am. Oil Co.*, 499 U.S. at 248).

[35] Dkt. 20-1, p. 6.

[36] *Arabian Am. Oil Co.*, 499 U.S. at 248 (no presumption against extraterritoriality).

**Step One: The Presumption Against Extraterritorial Application Is Not Rebutted**

At step one, courts ask whether the statute gives a "clear, affirmative indication" that it applies extraterritorially.[37] ERISA contains no such indication. As the Eastern District held in *Reliance*, "ERISA does not contain any explicit language clearly expressing extraterritorial reach." ERISA's broad jurisdictional language — applying to "any employer engaged in commerce or in any industry or activity affecting commerce" — is nearly identical to the Title VII language the Supreme Court found insufficient to support extraterritorial reach in *EEOC v. Arabian Am. Oil Co.* ("*Aramco*"), 499 U.S. 244, 250 (1991).[38] Courts in this district and others have consistently held that this boilerplate commerce language does not rebut the presumption.[39]

After *Aramco* held that identical language in Title VII did not support extraterritorial reach, Congress amended Title VII in 1991 to add express extraterritoriality language for U.S. citizens working abroad — but Congress made no corresponding amendment to ERISA.[40] The Court should look to this Congressional silence because "[t]he awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which [Congress] has expressly legislated the extraterritorial application of a statute."[41]

**Step two: The Case Does Not Present a Domestic Application of ERISA**

Because the presumption against extraterritoriality is not rebutted, the Court proceeds to step two: whether the case involves a "domestic application" of the statute by asking whether the conduct relevant to the statute's "focus" occurred in the United States.[42] As *Ymeri* held, "[t]he

---

[37] *RJR Nabisco*, 579 U.S. at 337.

[38] *Chong*, 2008 WL 5205968, at *10; *Reliance*, 386 F. Supp. 3d at 510–11.

[39] *Bajrami*, 334 F. Supp. 3d at 663–64; *Reliance*, 386 F. Supp. 3d at 511; *Chong v. InFocus Corp.*, No. CV-08-500-ST, 2008 WL 5205968, at *10 (D. Or. Oct. 24, 2008).

[40] *Chong*, 2008 WL 5205968, at *9.

[41] *Arabian Am. Oil Co.*, 499 U.S. at 258.

[42] *RJR Nabisco*, 579 U.S. at 337.

9

focus inquiry under step two of the extraterritoriality analysis is specific and directed towards § 502(a)(1)(B)" and "the ultimate question is as to the 'object of the statute's solicitude.'"[43] The relevant conduct is therefore the conduct underlying Plaintiffs' claims — their employment, their injuries, and their payment for benefits — all of which occurred in Afghanistan and Kosovo.[44]

Here, just as in *Bajrami*, *Reliance*, and *Ymeri*, Plaintiffs are residents of Kosovo who were employed in Afghanistan, contracted for disability benefits through a Cayman Islands intermediary (GSS), suffered injuries in Afghanistan, and submitted their claims from abroad.[45] "[W]ithin the last four decades of ERISA's enactment, no district court has held that a foreign national working abroad can bring a claim under ERISA."[46]

LINA's argument that domestic plan administration defeats the extraterritoriality bar was squarely considered and rejected in all three decisions. The fact that LINA's employees in Cleveland and at its claims offices in Arizona, Minnesota, Pennsylvania, and Texas processed and denied Plaintiffs' claims[47] does not transform this into a domestic application of ERISA. The claims were submitted because of injuries suffered in Afghanistan by foreign nationals whose entire employment relationship was performed outside the United States. Focusing solely on the location of plan administration would render "territorial borders, as well as the citizenship and location of the employees . . . irrelevant" and would "eviscerate the presumption against extraterritorial application."[48] This is true particularly here where, "although the administration of

---

[43] *Ymeri*, slip op. at 8–9 (quoting *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018)) (Exhibit 3).

[44] Dkt. 1-2 (Exhibit B to Defendant's Notice of Removal), ¶¶ 1-23.

[45] *Id.*

[46] *Reliance*, 386 F. Supp. 3d at 511 (citing *Bajrami*, 334 F. Supp. 3d at 663–64; *Chong*, 2008 WL 5205968, at *4, 6; *Maurais v. Snyder*, No. 00-2133, 2000 WL 1368024, at *2 (E.D. Pa. Sept. 14, 2000)).

[47] Dkt 1-1, p. 5.

[48] *Ymeri*, slip op. at 9 (quoting *Chong*, 2008 WL 5205968, at *5) (Exhibit 3).

the relevant benefit plan occurred domestically, foreign events underlay the employees' benefit claims."[49] The Supreme Court has cautioned that the presumption is not "a craven watchdog" that "retreats to its kennel whenever some domestic activity is involved in the case."[50]

### 2. Other Independent Legal Duties Support Plaintiffs' Claims

LINA's problem on the first prong does not end with extraterritoriality. LINA also cannot show that no other legal duty supports Plaintiffs' claims, independent of the Policy. Plaintiffs' claims for fraud, bad faith, and negligent misrepresentation arise from LINA's own affirmative conduct: the Cleveland denial letters falsely asserting untimeliness, and the June 2024 correspondence falsely asserting that foreign nationals were categorically ineligible.[51] The duties not to defraud, to act in good faith, and not to negligently misrepresent are duties imposed by Pennsylvania law that exist entirely apart from any ERISA plan.[52] In other words, a court adjudicating these claims need not open the LINA Policy; it need only ask whether LINA's representations were false and whether Plaintiffs relied on them.

Because Plaintiffs' claims rest on independent duties that exist apart from the LINA Policy, they could not have been brought under § 502(a) even if ERISA reached these Plaintiffs.

### VII.    *Yegiazaryan v. Smagin* Does Not Change the Extraterritoriality Analysis.

---

[49] *Id.* at 10. (citing *Bajrami* and *Reliance*)

[50] *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010).

[51] Dkt. 1-2 (Exhibit B to Defendant's Notice of Removal), ¶¶ 162–168.

[52] *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012) ("A state's common law, generally intended to prevent sellers of goods and services, including benefit plans, from misrepresenting . . . the scope of their services, is 'quite remote from the areas with which ERISA is expressly concerned — reporting, disclosure, fiduciary responsibility, and the like.") (internal quotations omitted).

11

LINA argues that *Yegiazaryan v. Smagin*, 599 U.S. 533 (2023), requires a "contextual analysis" that yields a domestic application of ERISA here.[53] This argument misreads *Yegiazaryan* and cannot be squared with the settled ERISA extraterritoriality framework.

In *Yegiazaryan*, the Supreme Court held that a Russian plaintiff who had obtained a California judgment confirming an arbitral award suffered a "domestic injury" under RICO when a California-based defendant conspired to frustrate collection of that judgment in California. The Court's analysis turned on the fact that "the rights that the California judgment provides to Smagin exist only in California."[54] The locus of the injury was California because the judgment — and the rights arising from it — existed only by virtue of California legal proceedings.[55]

The present case is fundamentally different. Plaintiffs arise from employment contracts performed in Afghanistan, injuries sustained in Afghanistan, and insurance coverage obtained in connection with that foreign employment.[56] In other words, unlike the judgment-debtor's fraudulent asset concealment in California in *Yegiazaryan*, the accrual of Plaintiffs' benefit claims occurred entirely abroad. Nothing in *Yegiazaryan* suggests that the mere administrative processing of a foreign national's claim by a domestic insurer transforms a foreign employment and injury into a domestic application of ERISA.

Moreover, *Yegiazaryan* a RICO claim by a Russian plaintiff who obtained a California judgment against a California-based defendant who then conspired to frustrate collection of that judgment in California.[57] The "domestic injury" in *Yegiazaryan* was the violation of rights that

---

[53] Dkt. 20-1, p. 13.

[54] 599 U.S. at 546.

[55] *Id.*

[56] Dkt. 1-2 (Exhibit B to Defendant's Notice of Removal), ¶¶ 1-23.

[57] *Yegiazaryan v. Smagin*, 599 U.S. 533, 536-37, 143 S. Ct. 1900, 1905 (2023) ("Respondent Vitaly Smagin holds a multimillion dollar **California judgment** against petitioner Ashot Yegiazaryan, **who lives in California**. Smagin, who resides in Russia, filed suit in the Central

existed only by virtue of a California court judgment.[58] Here, Plaintiffs' rights arise from work, injuries, and premium payments that occurred entirely abroad.[59] *Yegiazaryan* does not disturb the uniform line of cases, holding that ERISA does not reach these Plaintiffs.

**VIII.   LINA's Exemption and Uniformity Arguments Have Already Been Rejected**

To the extent LINA relies on ERISA's foreign plan exemption, 29 U.S.C. § 1003(b)(4), which excludes plans "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens," as evidence that Congress intended ERISA to cover domestic plans with foreign participants, that argument has been squarely rejected by the Eastern District of Pennsylvania.[60]

In *Reliance*, the Eastern District held that the foreign plan exemption rests on a "mistaken premise that extraterritoriality can be implied," when the Supreme Court requires "an affirmative intention of Congress clearly expressed."[61] The Court construed the exemption only as "narrow indication of what is not explicitly considered an ERISA-covered plan" and found it would be "mere speculation to conclude that this exemption means that foreign nationals working in a foreign country are within the scope of ERISA."[62] In *Bajrami*, the Court added that "the exemption

District of California alleging that Yegiazaryan, with the assistance of petitioner CMB Monaco (formerly Compagnie Monégasque de Banque), engaged in a pattern of **criminal activity, predominantly in** and **targeted at California, to prevent him from collecting on his California judgment**, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. §§1961-1968.") (emphasis added).

[58] *Id.* at 1907 ("The thrust of Smagin's allegations is that the defendants worked together under Yegiazaryan's direction to frustrate Smagin's collection on the California judgment through a pattern of wire fraud and other RICO predicate racketeering acts, including witness tampering and obstruction of justice.").

[59] Dkt. 1-2 (Exhibit B to Defendant's Notice of Removal), ¶¶ 21-22.

[60] Dkt. 20-1, p. 12.

[61] *Reliance,* 386 F. Supp. 3d at 510.

[62] *Reliance*, 386 F. Supp. 3d at 510–11.

concerns the plan itself, not who may bring suit."[63] *Ymeri* agreed, holding that what is missing is "an 'affirmative intention of the Congress clearly expressed.'"[64] The fact that over 20,000 U.S. employees were covered under the same policy tells the Court only about the plan's domestic breadth. It says nothing about whether these seventeen Kosovar plaintiffs whose entire employment and injury occurred abroad can invoke § 502(a)(1)(B).

Finally, LINA argues that remand would create an anomaly — that under *Yates v. Hendon*, and *Wolk v. UNUM Life Insurance of America*, the same AECOM plan cannot be governed by different legal regimes for different claimants.[65] This argument was addressed and rejected in *Ymeri*. As the *Ymeri* Court explained, *Yates* concerned whether a working owner of a business could qualify as a "participant" in a benefit plan — a textual question about ERISA's domestic scope — not the extraterritorial application of ERISA to foreign nationals abroad.[66] "There is nothing in *Yates* or *Wolk* suggesting that Congress intended its uniformity goals to override the presumption against extraterritoriality."[67] The apparent anomaly of different legal regimes for different claimants under the same plan is simply the consequence of Congress's decision not to legislate extraterritorially. Courts may not override that choice without "the affirmative intention of the Congress clearly expressed."[68]

---

[63] *Bajrami*, 334 F. Supp. 3d at 664.
[64] *Ymeri*, slip op. at 7 (Exhibit 3).
[65] Dkt. 20-1, p. 15; *Yates v. Hendon*, 541 U.S. 1 (2004), and *Wolk v. UNUM Life Insurance of America*, 186 F.3d 352 (3d Cir. 1999),
[66] *Ymeri*, slip op. at 7 n.4 (Exhibit 3).
[67] *Id.*
[68] *Morrison*, 561 U.S. at 255.

### IX.    LINA's Express Preemption Theory Cannot Save the Motion to Dismiss

Last, LINA's Notice of Removal invoked only complete preemption under 29 U.S.C. § 1132(e)–(f) as the basis for federal subject matter jurisdiction. Its Motion to Dismiss now advances, for the first time, express preemption under ERISA § 514(a), 29 U.S.C. § 1144(a).[69]

LINA's express preemption argument fails for the same reason as LINA's complete preemption theory. Section 514(a) preempts state laws that "relate to" an ERISA employee benefit plan, but the "relates to" clause cannot "extend to the furthest stretch of its indeterminacy."[70] Instead, courts must look to the objectives of ERISA and the actual effect of the state law on the plan.[71] State law claims whose duties are "generated outside the ERISA context" and that are "quite remote from the areas with which ERISA is expressly concerned" survive that inquiry.[72]

Here, Plaintiffs' claims arise from employment in Afghanistan, injuries sustained in Afghanistan, and coverage procured in connection with entirely foreign employment relationships. The conduct driving these claims is foreign. If the presumption against extraterritoriality bars ERISA's civil enforcement mechanism under § 502(a), it equally bars LINA from invoking § 514(a) to sweep in the same foreign-based claims through preemption's back door. LINA cannot seek dismissal and avoid remand by repackaging a failed complete preemption theory as express preemption.

---

[69] *Compare* Dkt. 1, Defendant's Notice of Removal ¶¶ 1–5 (asserting only complete preemption under 29 U.S.C. § 1132(e)–(f) and § 1331) *with* Dkt. 20-1 pp. 7-19 (raising express preemption under § 514(a), 29 U.S.C. § 1144(a), for the first time).

[70] *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins*. Co., 514 U.S. 645, 655 (1995).

[71] *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 84 (3d Cir. 2012).

[72] *Id*. at 85.

15

## X.    Conclusion

LINA's removal theory and its motion to dismiss rest on the same flawed premise that ERISA applies to these Plaintiffs. It does not. ERISA does not apply extraterritorially to foreign nationals whose employment, injuries, and benefit claims arose entirely outside the United States, as the Eastern District of Pennsylvania held in *Bajrami* and *In re Reliance Standard* on facts indistinguishable from those here, and as the Central District confirmed in *Ymeri* under the very same LINA policy. Because ERISA does not reach these Plaintiffs, LINA cannot establish preemption and its motion must fail.

WHEREFORE, Plaintiffs respectfully request that the Court deny LINA's Motion to Dismiss in its entirety.

Respectfully Submitted,

**DOYLE DENNIS AVERY LLP**
MICHAEL PATRICK DOYLE
*Admitted Pro Hac Vice*
JEFFREY I. AVERY
*Admitted Pro Hac Vice*
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: (713) 571-1146
Fax: (713) 571-1148
service@doylelawfirm.com

**KOLSBY, GORDON, ROBIN & SHORE**
Sarah O. Schindler
Attorney I.D. No 314912
2000 Market Street – 28th Floor
Philadelphia, PA 19103
Phone: (215) 851-9700
Fax: (215) 851-9701
**ATTORNEYS FOR PLAINTIFFS**

16

## <u>CERTIFICATE OF SERVICE</u>

I affirm that the foregoing has been served on all counsel of record in compliance with the Federal Rules of Civil Procedure via the Court's ECF electronic filing system on June 8, 2026.


<u>/s/ Sarah O. Schindler</u>
Sarah O. Schindler

17