**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABDULLA AJETI, ARBEN SOPAJ, ARJAN RAMADANI, AVNI MEHMETI, BEKIM ZAHIRI, BURHAN LIMANI, BURIM JASHARI, ENVER RAMADANI, FATMIR REXHAJ, FATON GASHI, GYNER ISMAILI, JETON JASHARI, NASER RRAHMANI, RAMIZ UKSHINI, SALIH OSMANI, SHPEJTIM SHERIFI, VLORA PAQARIZI, <br><br> Plaintiffs, <br><br> v. <br><br> LIFE INSURANCE COMPANY OF NORTH AMERICA <br><br> Defendant. | Civil Action No.: 26-3249-HB |

## DEFENDANT LINA'S COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTION TO REMAND



**HINSHAW & CULBERTSON LLP**
111 Wood Avenue South, Suite 210
Iselin, New Jersey 08830
908-374-0330 (Telephone)
dryan@hinshawlaw.com
fhoensch@hinshawlaw.com
marissaedwards@hinshawlaw.com
asantos@hinshawlaw.com
*Attorneys for Defendants*

1103350\330358864.v1

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT……………………………………………………………………….......3

I.      ERISA GOVERNS THIS ACTION…………………………………………………....3

        A.      ERISA contains a "clear, affirmative indication" that it applies to the claims of international employees seeking benefits under domestic employee benefit plans. ........................................................................................................ 4

        B.      Even if ERISA does not provide for extraterritorial application, this case involves a domestic application of ERISA because the conduct that is relevant to ERISA's focus occurred in the United States. ....................................... 9

                1.      The focus of ERISA's remedial provision is wrongful benefit denials. ............................................................................................... 10

                2.      Precedent supports the conclusion that this case involves a domestic application of ERISA. ............................................................................. 12

                3.      Plaintiffs have not established that the focus of § 1132(a)(1)(B) is their employment abroad or injuries sustained abroad. ........................... 15

II.     ERISA COMPLETELY PREEMPTS PLAINTIFFS' CLAIMS BECAUSE THEY ALL DERIVE FROM LINA'S DENIALS OF THEIR CLAIMS FOR DISABILITY BENEFITS UNDER THE AECOM PLAN. ............................................ 18

III.    ERISA EXPRESSLY PREEMPTS PLAINTIFFS' STATE LAW CLAIMS. ................. 20

CONCLUSION………………………………………………………………………..…21

1103350\330358864.v1

Defendant Life Insurance Company of North America[1] ("LINA") respectfully submits this memorandum as its combined reply in support of its motion to dismiss (Dkt. 20) the complaint filed by Plaintiffs[2] and its response in opposition to Plaintiffs' motion to remand (Dkt. 23).[3]

## INTRODUCTION

Both the motion to dismiss and the motion to remand depend on the same pair of issues: First, does the Employee Retirement Income Security Act of 1974 ("ERISA") contain language indicating that Congress intended it to apply in this factual setting, where foreign-national plaintiffs allege that a domestic plan fiduciary engaged in misconduct in the United States that violated the plaintiffs' rights under an employee benefit plan, which was established by a domestic employer to provide both foreign and domestic employees with disability insurance? Second, even if there is no clear textual support for extraterritorial application, does this case represent a domestic application of ERISA because the conduct relevant to the focus of ERISA and its remedial provision, 29 U.S.C. § 1132(a)(1)(B), occurred in the United States?

An affirmative answer to *either* of these questions means that ERISA governs this action, and completely preempts the claims Plaintiffs have attempted to assert under Delaware and California law. Compl., ¶ 20. As explained below, the answer to both questions is "yes." ERISA expressly encompasses domestic benefit plans like AECOM's, which covers resident and

---

[1] While Plaintiffs refer to Life Insurance Company of North America as "CIGNA" throughout the Complaint, it is referred to as LINA herein.

[2] The named plaintiffs are Abdulla Ajeti, Arben Sopaj, Arjan Ramadani, Avni Mehmeti, Bekim Zahiri, Burhan Limani, Burim Jashari, Enver Ramadani, Fatmir Rexhaj, Faton Gashi, Gyner Ismaili, Jeton Jashari, Naser Rrahmani, Ramiz Ukshini, Salih Osmani, Shpejtim Sherifi, Vlora Paqarizi (collectively, "Plaintiffs").

[3] Because many of the arguments overlap, and for the sake of judicial economy, LINA submits this memorandum as its combined opposition to Plaintiffs' motion to remand and reply in further support of LINA's motion to dismiss. Accordingly, this memorandum complies with the 25-page limitation for opposition briefs pursuant to Your Honor's Individual Policies and Procedures.

nonresident employees. Further, the focus of ERISA's remedial provision is the alleged "wrongful denial of benefits," which, in this case, occurred in the United States, where LINA, as the fiduciary and insurer of the AECOM plan, received, investigated, and denied Plaintiffs' claims for benefits. *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

In their briefs, Plaintiffs ask this Court to simply adopt three non-binding district court decisions,[4] without performing the rigorous analysis required by the Supreme Court's case law concerning extraterritoriality issues. But Plaintiffs' cited cases do not resolve the issues before this Court because they came down before *Yegiazaryan v. Smagin*, 599 U.S. 533 (2023), in which the Supreme Court clarified the second step of the extraterritoriality analysis and adopted a contextual approach for determining when international claimants have alleged a domestic injury. Further, two of Plaintiffs' cases did not address the second step of the extraterritoriality analysis at all. And all three conflict with Supreme Court and Third Circuit precedents by exempting foreign-participant claims from ERISA while applying the statute to the claims of domestic employees under the same ERISA-governed plan.

In *Yegiazaryan*, the Court determined that RICO was being applied domestically because the defendant engaged in misconduct in the United States that violated the Russian plaintiff's rights under a judgment entered in the United States. So too here, Plaintiffs allege that LINA engaged in misconduct in the United States that violated their rights under a benefit plan that was established in the United States. Because of the nexus between Plaintiffs' claims and the United States, this matter involves the domestic application of ERISA. The Court should accordingly deny Plaintiffs' motion to remand and grant LINA's motion dismiss.

---

[4] *Ymeri v. Life Insurance Co.*, No. 2:21-cv-01491-VAP-JPRx, 2021 U.S. Dist. LEXIS 76823 (C.D. Cal. Apr. 20, 2021); *In re Reliance Standard Life Insurance Co.*, 386 F. Supp. 3d 505 (E.D. Pa. 2019); *Bajrami v. Reliance Standard Life Insurance Co.*, 334 F. Supp. 3d 659 (E.D. Pa. 2018).

2

**ARGUMENT**

## I.     ERISA governs this action.

Plaintiffs do not contest that AECOM's plan is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1), nor do they plausibly contest that ERISA would govern their claims, which all arise from alleged denials of their claims under the AECOM plan, if they were U.S. residents. Rather, Plaintiffs' argue that the presumption against extraterritorial application of federal law bars the Court from applying ERISA, and allows them to seek contractual remedies under Delaware law and extra-contractual and punitive damages under California law.[5] *See* Compl., ¶ 20. Ironically, Plaintiffs invoke the canon against extraterritoriality not to avoid United States law, or to avail themselves of Kosovo law, but to use California law to obtain extra-contractual and punitive damages in connection with denied benefit claims—although ERISA precludes these remedies. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (holding that ERISA does not authorize participants to recover extra-contractual or punitive relief for benefit denials). Hence, this case involves a conflict between the laws of the United States and California, not between domestic and foreign law.

In any event, the presumption against extraterritoriality does not help Plaintiffs under the extraterritoriality doctrine's current landscape. Plaintiffs would have no claims at all had AECOM not established the plan in the United States, and had LINA not taken actions in the United States to allegedly wrongfully deny Plaintiffs' claims for benefits. The rights Plaintiffs seek to vindicate exist only under a domestic benefit plan, the injury they allege is the violation of their rights under that plan, and LINA allegedly violated those rights through misconduct in the United States.

---

[5] Plaintiffs are engaged in both forum shopping and substantive-law shopping. They want a Pennsylvania state court to apply California law to their punitive damages claim, and Delaware law to their contractual claims. *See* Compl., ¶ 20.

As the parties' briefs note, application of the extraterritoriality doctrine involve two steps. The first asks "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Yegiazaryan v. Smagin*, 599 U.S. 533, 541-42 (2023) (quoting *RJR Nabisco.*, 579 U.S. at 337). If the answer is "yes," the presumption against extraterritoriality is rebutted, and the Court need not proceed to step two. *Id.* However, if the presumption is not rebutted, step two asks whether the case involves a domestic application of the statute, which is resolved by identifying the "statute's focus" and determining whether "the conduct relevant to that focus occurred in United States territory." *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412, 413 (2023). Courts may start their analysis at step two in appropriate cases, *RJR Nabisco*, 579 U.S. at 338 n.5, such as when addressing step one requires resolving difficult questions that do not change the outcome of the case. *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413 (2018).

While a "yes" answer at either of the steps establishes ERISA's application to this case, both steps indicate that ERISA applies.

A.    **ERISA contains a "clear, affirmative indication" that it applies to the claims of international employees seeking benefits under domestic employee benefit plans.**

The Supreme Court has stated that "[i]f Congress has provided an unmistakable instruction that [a statutory] provision is extraterritorial, then claims alleging exclusively foreign conduct may proceed [under the provision], subject to 'the limits Congress has (or has not) imposed on the statute's foreign application.'" *Abitron Austria*, 600 U.S. at 418 (citing *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337-338 (2016). "[P]ossible interpretations, broad definitional language, and generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality." *In re Fairfield Sentry Ltd.*, 147 F.4th 136, 154-57 (2d Cir. 2025) (internal quotation marks and citations omitted). But "an express statement of extraterritoriality is not

4

essential" and context can supply sufficient textual support for extraterritorial effect. *RJR Nabisco*, 579 U.S. at 340 (RICO's substantive prohibitions in § 1962 expressly provided for extraterritorial application by incorporating predicate offenses that applied to extraterritorial crimes). The question is whether "Congress has affirmatively and unmistakably instructed that" the statutory provision at issue applies to foreign conduct. *Abitron Austria*, 600 U.S. at 417-418.

In ERISA's coverage provision, Congress has unmistakably instructed that the statute has extraterritorial effect. Under 29 U.S.C. § 1003(a), ERISA's coverage expressly extends to "any employee benefit plan" that is established or maintained by "any employer engaged in commerce."[6] § 1003(a). Following this broad grant of coverage, § 1003(b)(4) expressly addresses domestic plans covering both foreign and domestic employees. Under § 1003(b)(4), a plan covering both foreign and domestic employees is excluded from ERISA's coverage ***only*** if it "is maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens." 29 U.S.C. § 1003(b)(4). These provisions affirmatively provide that ERISA governs a benefit plan like AECOM's, since it was established in the United States and covers thousands of United States residents. Plaintiffs have not attempted to argue that substantially all covered persons under the plan are nonresident aliens.[7]

---

[6] AECOM is plainly engaged in "commerce" as defined by ERISA, 29 U.S.C. § 1002(11), since it handles transportation, environmental, and infrastructure projects throughout the United States. *See* Dkt. 1 at ¶16 n.1 (citing https://aecom.com/press-releases/ (last visited 5/5/2026), which identified AECOM services related to the Massachusetts Department of Environmental Protection's program for PFAs (4/28/2026); San Diego Unified School District's capital bonds project (3/24/2026); U.S. Missile Defense Agency's SHIELD contract (3/19/2026); New York City's combined sewer overflow storage tunnel (3/16/2026); and Sound Transit's Seattle-area regional transit project (2/27/2026)).

[7] In 2017 and 2018, the AECOM plan covered over 20,000 United States employees, and it was established in the United States by a U.S. employer. Dkt. 1-1, Declaration of Kellie Downey, ¶5.

5

Together, §§ 1003(a) and 1003(b)(4) expressly provide for ERISA's application in this situation, where a foreign employee of a U.S. employer challenges a denial of benefits by a domestic insurer under a benefit plan that an employer maintains in the United States to cover primarily domestic employees. *Cf. RJR Nabisco*, 579 U.S. at 340 (RICO's substantive provision, 28 U.S.C. § 1962, expressly provided for extraterritorial application because it incorporated criminal prohibitions that expressly apply to extraterritorial conduct); *In re Fairfield Sentry Ltd.*, 147 F.4th 136, 156 (2d Cir. 2025) (Congress expressly provided for extraterritorial application of safe harbor for securities transactions, 11 U.S.C. § 546(e), and therefore § 546(e) barred foreign liquidators from seeking to avoid redemptions by U.S. investors in British Virgin Islands investment funds, because § 561(d) provided that any bankruptcy provision "relating to securities contracts" shall apply to cross border insolvency cases under chapter 15 of Bankruptcy Code).

Plaintiffs' reliance on *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991) ("*Aramco*") is unavailing. Dkt. 23-1 at 10-11. There, a U.S. citizen alleged that his United States employer engaged in overseas discrimination against him, in violation of Title VII, when it discharged him from his employment in Saudia Arabia. While the Court held that Title VII's provision stating that it applied to any "employers" engaged in broadly defined "commerce" did not overcome the presumption against extraterritorial application, *Aramco*, 499 U.S. at 249-251 (discussing definition of "commerce" at 42 U.S.C. § 2000e(g)-(h)), ERISA, unlike Title VII, expressly addresses employee benefit plans covering foreign employees in § 1003(b)(4), and provides there such plans are subject to ERISA unless the plans are maintained outside the United States and substantially all plan participants are nonresident aliens. *Aramco* does not dispose of the first step of the extraterritoriality inquiry because ERISA uses "commerce" to broadly sweep

6

benefit plans into its coverage while also specifically providing for its application to plans that may include foreign participants, as here.

As Plaintiffs note, district courts have found that § 1003(b)(4) is merely a "narrow indication of what is *not* explicitly considered an ERISA-covered plan," rather than an affirmative indication that ERISA applies to the benefit claims of international employees. Dkt. 23-1 at 14-15 (citing *Ymeri v. Life Insurance Co.*, No. 2:21-cv-01491-VAP-JPRx, 2021 U.S. Dist. LEXIS 76823, at *7 (C.D. Cal. Apr. 20, 2021); *In re Reliance Standard Life Insurance Co.*, 386 F. Supp. 3d 505, 511 (E.D. Pa. 2019); *Bajrami v. Reliance Standard Life Insurance Co.*, 334 F. Supp. 3d 659, 664 (E.D. Pa. 2018)). However, the courts in these cases failed to give effect to § 1003(a)'s statement that "this subchapter shall apply" to plans falling within ERISA's broad coverage under § 1003. The subchapter referenced in § 1003(a) is Subchapter I of ERISA, which includes ERISA's civil enforcement provision, § 1132(a)(1)(B). The plain meaning of § 1003(a)'s express statement that this "subchapter shall apply" to plans meeting the criteria of § 1003 is that ERISA and its civil enforcement provision apply to the claims of both domestic and foreign employees under a plan within ERISA's coverage.

The *Ymeri*, *Bajrami*, and *Reliance* courts acknowledged that § 1003 brings within ERISA's scope a benefit plan that covers both foreign and domestic employees, while the foreign plan exemption, § 1003(b)(4), excludes a plan only if it is maintained outside the United States primarily for the benefit of nonresident aliens. But the courts determined that this distinction concerned only a plan's status under ERISA, not "who may bring suit." *Bajrami*, 334 F. Supp. 3d at 664 (exemption only "concerns the plan itself, not who may bring suit"); *Ymeri*, 2021 U.S. Dist. LEXIS 76823, at *7 (same) (quoting *Bajrami*). However, a rule exempting foreign-participant claims from ERISA while applying the statute to domestic-employee claims under the same plan

7

conflicts with Supreme Court and Third Circuit precedents. ERISA seeks "to provide a uniform regulatory regime over employee benefit plans," and incentivize employers to provide benefits to employees. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Consistent with those statutory aims, courts have held that whether a given claim under an ERISA plan is controlled by ERISA *depends on the status of the plan, not the claimant. Yates v. Hendon,* 541 U.S. 1, 17 (2004) (working owner of a professional corporation that sponsored pension plan was "participant" entitled to invoke ERISA's provisions; Court's holding avoided "the anomaly that the same plan will be controlled by discrete regimes: federal-law governance for the nonowner employees; state-law governance for the working owner"); *Wolk v. UNUM Life Ins. of Am.*, 186 F.3d 352, 357 (3d Cir. 1999) (partner in law firm sponsoring plan qualified as plan beneficiary under ERISA because contrary ruling "would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA").[8] The holdings of *Bajrami*, *Reliance*, and *Ymeri* conflict with *Yates* and *Wolk* because they subject the same benefit plan to disparate bodies of substantive law based on the characteristics of the claimant, allowing a foreign participant to seek punitive damages and other state-law remedies that ERISA precludes for domestic participants. Further, *Ymeri* and *Bajrami* conflict with the plain language of §§ 1003(a) and § 1101(a), which subject plans covering both foreign and domestic employees to all of Subchapter I, including the civil enforcement mechanism, 29 U.S.C. § 1132 and the preemption provision, 29 U.S.C. § 1144.

---

[8] *See also Shyman v. Unum Life Ins. Co*., 427 F.3d 452, 454-55 (7th Cir. 2005) (whether a given package of benefits is in or out of ERISA's scope is determined at the plan level, rather than participant by participant, and therefore ERISA governed independent contractor's claim for disability benefits under group policy that covered policyholder's employees and independent contractors).

1103350\330358864.v1

The *Ymeri* court also found that even where a statute's substantive provisions apply extraterritorially, courts should not apply remedial provisions to foreign nationals because of "the high risk of international friction." *Ymeri*, 2021 U.S. Dist. LEXIS 76823, at *7. But the risk of international friction does not exist in this case, since Plaintiffs themselves want a court in the United States to apply domestic law (albeit California rather than federal law). This case presents a conflict not between the laws of the United States and a foreign state, but between ERISA (which does not allow punitive or extra-contractual damages) and Delaware and California law (which Plaintiffs maintain allows such remedies).

The Court should therefore hold that ERISA § 1003 expressly provides for extraterritorial effect, and the statute applies in this case.

**B.     Even if ERISA does not provide for extraterritorial application, this case involves a domestic application of ERISA because the conduct that is relevant to ERISA's focus occurred in the United States.**

Regardless of whether ERISA expressly applies to foreign participants, the Court should find at step two that this case involves a permissible domestic application of ERISA and its civil enforcement provision, 29 U.S.C. § 1132(a). The step two analysis starts "by identifying the focus of congressional concern underlying the provision at issue." *Abitron Austria*, 600 U.S. at 418 (cleaned up) (quoting *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413-14 (2018)). The focus of a statute is "the object of its solicitude," which can include the conduct the statute regulates, the parties, and the interests the statute seeks to protect or vindicate. *WesternGeco*, 585 U.S. at 414. Once the statute's focus is identified, this Court must ask whether the conduct relevant to that focus occurred in United States territory. *Abitron*, 600 U.S. at 418.

Step two is designed to apply the presumption to claims involving "both domestic and foreign activity, separating the activity that matters from the activity that does not." *Abitron*, 600 U.S. at 419. When the conduct relevant to the statute's focus occurred in the United States, the

9

case involves a domestic application of the statute, even if other conduct occurred abroad. *WesternGeco*, 585 U.S. at 414. But if the relevant conduct occurred in another country, "then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *WesternGeco*, 585 U.S. at 414. As explained below, the focus of ERISA generally and the civil enforcement provision in particular is fiduciary conduct resulting in improper benefit denials, or other injuries to the plan or covered persons. In this case, the conduct relevant to the statute's focus is LINA's denials of the Plaintiffs' benefit claims. LINA adjudicated and denied Plaintiffs' claims under AECOM's plan in the United States, and the Plaintiffs' claims therefore represent domestic applications of ERISA.

### 1. The focus of ERISA's remedial provision is wrongful benefit denials.

ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), allows plan participants, such as Plaintiffs,[9] to sue in federal court to recover benefits wrongfully denied to them under a plan, and to enforce a plan fiduciary's statutory responsibilities. Under § 1132(a)(1)(B), covered persons may bring suit "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." This section enables a covered person to recover benefits promised in the plan when the plan fiduciary has improperly denied benefits. In *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), the Court stated that § 1132(a)'s six subsections "focus upon specific areas" and that the area of focus of § 1132(a)(1)(B), the first subsection, is the "wrongful denial of benefits and information." Thus, the focus of § 1132(a)(1)(B) is LINA's allegedly wrongful denials of Plaintiffs' benefit claims—and LINA's review, administration, and denial of those claims occurred

---

[9] Plaintiffs have not disputed that they meet ERISA's definition of plan "participant" under 29 U.S.C. § 1002(7). *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) ("participant" includes "former employees … who have a 'colorable claim' to vested benefits").

entirely domestically. *See* Kellie Downey Decl. ¶¶8-9 (Dkt. 1-1), Compl. ¶162 (Dkt. 1-2). Hence, Plaintiffs' claims represent domestic applications of ERISA.

Other provisions of ERISA reinforce the conclusion that the overall focus of the statute is establishing standards of conduct for plan fiduciaries and providing remedies for violations of those standards. *Varity Corp.* describes ERISA's "basic purposes" as "protect[ing] the interests of participants in employee benefit plans by establishing standards of conduct, responsibility, and obligation for fiduciaries and providing for appropriate remedies and ready access to the Federal courts." 516 U.S. at 513 (quoting congressional declaration of policy at 29 U.S.C. § 1001(b)) (ellipses omitted). This characterization of the statute reflects the stringent fiduciary obligations ERISA imposes. Under 29 U.S.C. § 1104(a)(1)(A), a fiduciary has a duty of loyalty under which it must act "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits and defraying reasonable expenses. A fiduciary is also subject to a duty of prudence, requiring it to act with the "care, skill, prudence, and diligence" that an expert familiar with similar benefit plans would use under the circumstances. § 1104(a)(1)(B). Noting ERISA's prohibitions against fiduciary misconduct, the Supreme Court has stated that "the focus of the statute thus is on the administrative integrity of benefit plans." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15 (1987).

In sum, these authorities establish that the focus of § 1132(a)(1)(B) is wrongful benefit denials under ERISA plans, and the focus of the statute generally is fiduciary conduct in administering plans. Consequently, in this case, the conduct relevant to the focus of ERISA is LINA's actions in administering the AECOM plan and allegedly wrongfully denying Plaintiffs' claims under the plan. Because that conduct occurred in the United States (Dkt. 1-1 at ¶¶8-9, Compl. ¶162), Plaintiffs' claims represent domestic applications of ERISA. *Cf. Force v. Facebook,*

*Inc.*, 934 F.3d 53, 72-74 (2d Cir. 2019) (where plaintiffs alleged that Facebook provided Hamas with a communications platform that aided and abetted Hamas's terrorist attacks, and overseas Facebook employees failed to remove Hamas posts inciting terrorist attacks, liability shield under § 230(c)(1) of Communications Decency Act applied domestically because the conduct relevant to its focus was litigation in United States courts).

  **2.  Precedent supports the conclusion that this case involves a domestic application of ERISA.**

Supreme Court case law holds that the focus of a remedial provision in a federal statute is the underlying conduct for which a remedy is provided. For example, in *WesternGeco*, the issue was whether patent infringement that resulted in the plaintiff's loss of profits on foreign sales involved a domestic application of the Patent Act's damages remedy, where the infringing system was assembled abroad from parts exported from the United States. 585 U.S. at 414-415. The Supreme Court began its analysis with the Act's text, which states that "the court shall award the claimant damages adequate to compensate for the infringement." Infringement—and not the award of damages, the plaintiff's lost foreign sales, or the overseas assembly of the infringing system— was "plainly the focus of § 284." Because the plaintiff relied on the definition of infringement in 35 U.S.C. § 271(f)(2), the Court also examined that provision, which imposes liability when a defendant exports components from the United States with the intent that they be combined abroad in such a manner that would infringe the patent if assembled within the United States. 585 U.S. at 415. The focus of this provision was "the domestic act of supplying [components] in or from the United States." As the focus of both provisions was infringement, and the defendant infringed the plaintiff's patent when it exported the components, the case involved a domestic application of the statute although the infringing system was assembled abroad, and the plaintiff's lost profits stemmed entirely from foreign, not domestic, sales. *Id.*

12

*WesternGeco* stands for the proposition that the focus of a remedial provision like § 1132(a)(1)(B) of ERISA is the underlying actionable conduct. In the case of § 1132(a)(1)(B), the underlying actionable conduct is LINA's allegedly wrongful denial of LTD benefits under a domestic ERISA-governed employee welfare benefit plan. Plaintiffs concede that LINA processed and denied their benefit claims in the United States. Dkt. 23-1 at 12; Compl. ¶162. Since LINA denied the claims and engaged in other alleged misconduct in the United States, Plaintiffs' claims represent domestic applications of ERISA under *WesternGeco*.

Similarly, in a case postdating the district court decisions that Plaintiffs rely upon, the Supreme Court prescribed a new standard for determining whether a statute is being applied extraterritorially. *Yegiazaryan* sets out the following rule:

> [I]n assessing whether there is a domestic injury, courts should engage in a case-specific analysis that looks to the circumstances surrounding the injury. If those circumstances sufficiently ground the injury in the United States, such that it is clear the injury arose domestically, then the plaintiff has alleged a domestic injury.

599 U.S. at 545. Plaintiffs argue that simply because they are foreign employees who worked for a United States company abroad, they cannot recover LTD benefits afforded to them as part of that employment under ERISA, but can only recover under U.S. state law. This argument is unavailing. The *Yegiazaryan* Court directed lower courts to "look to the circumstances surrounding the alleged injury to assess whether it arose in the United States." *Id.* While the plaintiff in *Yegiazaryan* was Russian, and the defendant committed the underlying fraud against the plaintiff in Russia, the Court held that the plaintiff nonetheless had established a domestic RICO injury because: (1) the defendant engaged in racketeering in California to thwart his ability to collect a judgment issued in California; and (2) the "injurious effects of the racketeering activity largely manifested in California" as the "rights that the California judgment provide[d] to [the plaintiff] exist[ed] only in California." *Yegiazaryan*, 599 U.S. at 545-546. Just as the *Yegiazaryan* defendant engaged in

13

domestic racketeering that harmed the Russian plaintiff, LINA allegedly committed fraud and bad-faith benefit denials in the United States. And just as the *Yegiazaryan* defendant injured the Russian plaintiff's interests under a domestic judgment, the Plaintiffs here allege that they suffered a violation of their rights under a domestic ERISA plan that a domestic employer established to provide both domestic and international employees with disability coverage.

Here, the alleged injury is the denial of LTD benefits under a United States-based employee welfare benefit plan. For purposes of whether Plaintiffs are entitled to LTD benefits, LINA must review the plan terms and Plaintiffs' respective medical conditions, without consideration as to where or how the alleged disabling conditions arose and without consideration of where Plaintiffs treated for their alleged disabling conditions. Plaintiffs' argument that their alleged disabling conditions arose in a foreign country and thus ERISA does not apply is a red herring and irrelevant to a determination of whether they are entitled to LTD benefits. In making a claim determination, LINA does not consider which country a Plaintiff treated in or whether the alleged disabling condition was a result of a physical or mental injury sustained in another country or whether it was sustained within the scope of employment performed on foreign soil. All of that is irrelevant to LINA's claim determination. Plaintiffs' employment status is only relevant as to whether they are participants under AECOM's employee welfare benefit plan for LTD benefits. It is completely irrelevant as to whether they are disabled under the terms of the plan. The injury that Plaintiffs complain of is LINA's allegedly improper denials of their respective claims for LTD benefits under the terms and conditions of a domestic, ERISA-governed employee welfare benefit plan. Under *Yegiazaryan*, Plaintiffs' allege a domestic injury and thus ERISA must apply under the circumstances presented here.

14

Despite the clear analogy between this case and *Yegiazaryan*, Plaintiffs try to distinguish the case, arguing that their claims "arise from employment contracts performed [and] injuries sustained in Afghanistan," and "insurance coverage obtained in connection with that foreign employment." Dkt. 23-1 at 14. They overlook, however, that their claimed injuries arise under not an insurance contract issued abroad, but one LINA issued in the United States, and to which a domestic employer subscribed for the purpose of funding benefits under its domestic ERISA plan. *See* Group Policy, Dkt. 1-1, at 22 of 192. And Plaintiffs overlook that LINA performed all the injurious acts they allege in the United States, demonstrating a closer connection to the United States than *Yegiazaryan*, where the defendant engaged in some racketeering activity abroad.

### 3. Plaintiffs have not established that the focus of § 1132(a)(1)(B) is their employment abroad or injuries sustained abroad.

While Plaintiffs assert that the focus of ERISA's remedial provision is their "employment, their injuries, and their payment for benefits"—which they claim occurred in Afghanistan and Kosovo (Dkt. 23-1 at 11 of 17)—*Varity Corp.*, *WesternGeco*, and the text of § 1132(a)(1)(B) demonstrate that the focus of § 1132(a)(1)(B) is the wrongful denial of benefits they allege. *Varity Corp.*, 516 U.S. at 512, states that the "wrongful denial of benefits and information" is the focus of 1132(a)(1)(B). It is undisputed that LINA's alleged wrongful activity occurred in the United States, and that Plaintiffs' alleged injuries arose in the United States, which is the situs of the benefit plan that created the rights they maintain LINA violated. Dkt. 1-1 at ¶¶8-9, Compl. ¶162. Plaintiffs' assertion that § 1132(a)(1)(B)'s focus is on their citizenship or the location of their employment or the location where they suffered their alleged disabling conditions is at odds with *WesternGeco*, where the Court found that the focus of the Patent Act's damages remedy, § 284, was the defendant's underlying acts of patent infringement, not the plaintiff's "award of damages," or "overseas events" such as the plaintiff's loss of foreign sales or the overseas assembly of the

15

components into an infringing system. *Western Geco*, 585 U.S. at 416. Plaintiffs' identification of § 1132(a)(1)(B)'s focus is also at odds with *Yegiazaryan*, since Plaintiffs complain that LINA engaged in domestic activities that violated their rights under a domestic benefit plan. *Yegiazaryan*, 599 U.S. at 545-546, found that a domestic injury occurred because the defendant engaged in domestic racketeering activity that violated a foreign plaintiff's rights under a domestic judgment.

Plaintiffs rely heavily on *Bajrami*, 334 F. Supp. 3d at 663-664, and *In re Reliance*, 386 F. Supp. 3d at 510-511 (Dkt. 23-1 at 12), but those cases were decided in 2018 and 2019, well before the Supreme Court case of *Yegiazaryan* came down. Consequently, the court in those cases had no opportunity to apply *Yegiazaryan*'s holding when determining whether foreign plaintiffs had alleged a domestic injury because they complained that plan fiduciaries in the United States had wrongfully denied their benefit claims under ERISA plans that were administered and established in the United States. As important, *Bajrami* and *In re Reliance* did not perform the second step of the extraterritoriality analysis. The opinions did not analyze ERISA and § 1132(a)(1)(B) to identify the statute's focus or determine whether the conduct relevant to ERISA's focus occurred in the United States.[10] Plaintiffs are mistaken when they intimate that those cases applied the two-step extraterritoriality analysis adopted in *RJR Nabisco*. Dkt. 23-1 at 14 of 17.

Plaintiffs also rely on the *Ymeri* case, which does address step two of the extraterritoriality doctrine, but in a manner that does not accord with the text of ERISA's remedial provision or relevant precedent. The *Ymeri* court's holding that § 1132(a)(1)(B) focuses "on the participant and

---

[10] The court in *Bajrami* and *In re Reliance* relied on two district court cases that predated the Supreme Court's adoption of the two-step extraterritoriality analysis in *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016). *See Bajrami*, 334 F. Supp. 3d at 663 n.28 (citing *Chong v. InFocus Corp.*, No. 08-500, 2008 U.S. Dist. LEXIS 103527, 2008 WL 5205968 (D. Or. Oct. 24, 2008); *Maurais v. Snyder*, No. 00-2133, 2000 U.S. Dist. LEXIS 13818, 2000 WL 1368024 (E.D. Pa. Sept. 14, 2000)); *In re Reliance*, 386 F. Supp. 3d at 511 n.40 (same).

1103350\330358864.v1

his or her claim for benefits," *Ymeri*, 2021 U.S. Dist. LEXIS 76823, at *10, conflicts with *Varity Corp.*, 516 U.S. at 512, which states that the focus of § 1132(a)(1)(B) is the "wrongful denial of benefits and information." In this case, the alleged "wrongful denial of benefits" occurred in the United States when LINA denied Plaintiffs' claims and allegedly misrepresented their entitlement to benefits. Further, *Ymeri*'s holding does not align with *WesternGeco*, which found that the focus of a remedial provision like § 1132(a) is the underlying conduct for which the remedy is provided. There, the Patent Act's damages provision, § 284, allowed for "damages adequate to compensate for the infringement" of the plaintiff's patent. The focus of § 284 was the defendant's infringing conduct in the United States, not the assembly of the components into an infringing system, which occurred abroad, or the plaintiff's loss of extra-territorial profits as a result of overseas sales of the infringing system. 585 U.S. 415-416. Under an analogous reading of § 1132(a)(1)(B), the focus of that provision is "the wrongful denial of benefits" for which § 1132(a)(1)(B) provides remedies. It is undisputed that LINA denied the Plaintiffs' claims in the United States.

The *Ymeri* court also found that an "approach that singularly focuses on the location of the plan administration" would render borders and the employees' citizenship and location irrelevant and eviscerate the extraterritoriality doctrine. *Ymeri*, 2021 U.S. Dist. LEXIS 76823, at *11. But the second step of the analysis is designed for claims like those here, which involve extraterritorial and domestic conduct. Its purpose is to identify the conduct regarding the violation that is relevant to the statute's focus. When that conduct occurred domestically, as it did here, the statute is being applied domestically, and there is no extraterritorial application of United States law. The *Ymeri* court's concern simply cannot materialize in a case like this one, where Plaintiffs are invoking the extraterritoriality doctrine not to avoid United States law, but to defeat the application of ERISA and avail themselves of California law, in a bid to obtain punitive damages that ERISA denies to

17

other participants in AECOM's plan. *Russell*, 473 U.S. at 144. *Ymeri* was also decided before the Supreme Court's *Yegiazaryan* decision.

In sum, ERISA imposes standards for fiduciary conduct to prevent "abuses of the special responsibilities borne by those dealing with [ERISA] plans." *Fort Halifax*, 482 U.S. 1, 15 (1987) (citing 120 Cong.Rec. 29197 (1974)). The "focus of the statute thus is on the administrative integrity of benefit plans." *Fort Halifax*, 482 U.S. at 15. The focus of ERISA's remedial provision, § 1132(a)(1)(B), in particular is the "wrongful denial of benefits and information." *Varity Corp.*, 516 U.S. at 512. It was in the United States that LINA administered the AECOM plan and denied Plaintiffs' benefit claims. Consequently, this action involves a domestic application of ERISA.

## II.    ERISA completely preempts Plaintiffs' claims because they all derive from LINA's denials of their claims for disability benefits under the AECOM plan.

ERISA is a statute with complete preemption force, and therefore a claim falling within the scope of its civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a), "even if pleaded in terms of state law, is in reality based on federal law" and removable to federal court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-208 (2004). The scope of this remedial provision encompasses all state-law claims challenging "the quantum of benefits due under an ERISA-regulated plan" or "the administration of or eligibility for benefits" under an ERISA plan. *Pryzbowski*, 245 F.3d at 272-274. Further, a federal court may "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 274 (3d Cir. 2001).

All the claims Plaintiffs assert arise from LINA's administration of their benefit claims under the AECOM plan. They allege that LINA breached the group policy by denying their benefits under the plan, that LINA made negligent and fraudulent misrepresentations concerning their eligibility for benefits under the plan, and that LINA denied benefits in bad faith because it

18

had no reasonable basis for doing so. As all the claims concern and arise from LINA's administration of the AECOM plan, ERISA completely preempts all the claims. *Early v. United States Life Insurance Co.*, 222 F. App'x 149, 151 (3d Cir. 2007) ("State law claims of bad faith and breach of contract … would ordinarily fall within the scope of ERISA preemption, if such claims relate to an ERISA-governed benefits plan."); *Pryzbowski*, 245 F.3d at 272-274 (claims alleging that health plan administrator negligently delayed approval of surgery and negligently trained claims personnel who decided medical coverage questions "fall within the realm of the administration of benefits" and were completely preempted).

Citing *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83–84 (3d Cir. 2012), Plaintiffs summarily assert that LINA's duties to refrain from fraud, negligent misrepresentations, and bad faith stem from Pennsylvania common law, that these duties arise independently of ERISA, and that a court can adjudicate their claims without opening LINA's group policy. Dkt. 23-1 at 13 of 17 & n.61. But *Iola* only stands for the proposition that ERISA does not preempt state-law misrepresentation claims arising from false statements an insurance broker makes, before a plan is formed, to induce an employer to establish the plan. The insurance broker there falsely represented to four closely held corporations that adopting the benefit plan it was promoting would generate significant tax savings, and in reliance on those representations the corporations agreed to participate in the plan, but the IRS audited the plan and the employers did not realize any of the promised tax savings. Here, Plaintiffs allege, not that LINA made misrepresentations before AECOM formed the plan and subscribed to the group policy, but that after the plan was in force, LINA misrepresented Plaintiffs' benefits and eligibility and acted in bad faith *while* it was administering their claims under the AECOM plan. *Iola* is plainly distinguishable.

19

Claims sounding in fraud are preempted when they are "premised on the existence of the plan and require interpreting the plan's terms." *Menkes*, 762 F.3d at 295-96; *see Pilot Life*, 481 U.S. at 47 (fraudulent inducement claim preempted by ERISA); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 (3d Cir. 1990) (misrepresentation claim preempted because it related to the ERISA plan). Here, Plaintiffs complain that LINA allegedly falsely stated that they were ineligible for benefits under the plan. The Court plainly cannot resolve that claim without interpreting the plan, and the claim is therefore completely preempted under *Davila* and *Pryzbowksi*.

## III.   ERISA expressly preempts Plaintiffs' state law claims.

Section 514(a) of ERISA provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The term "relate to" is given "a broad, common-sense meaning," such that a state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). The express preemption provisions of ERISA are "deliberately expansive, and designed to establish [ERISA] plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987). All of Plaintiffs' claims stem from LINA's denial of benefits under the AECOM plan and made misrepresentations about Plaintiffs' entitlement to benefits under the plan.

20

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening brief, Life Insurance Company of North America respectfully requests that the Court deny Plaintiffs' motion to remand (Dkt. 23) and grant LINA's motion to dismiss Plaintiffs' Complaint with prejudice (Dkt. 20).

Respectfully submitted,

Dated: June 15, 2026

**HINSHAW & CULBERTSON LLP**

By: */s/ Marissa Edwards*
Fred Hoensch (Pa. ID 208894)
Marissa Edwards (Pa. ID 316751)
111 Wood South Avenue, Suite 210
Iselin, New Jersey 08830
Tel: 908-374-0336
Fax: 908-374-0345
fhoensch@hinshawlaw.com
marissaedwards@hinshawlaw.com

Daniel K. Ryan (*pro hac vice*)
Peter E. Pederson (*pro hac vice*)
151 North Franklin Street, Suite 2500
Chicago, IL, 60606
Tel: 312-704-3248
Fax: 312-704-3001
dryan@hinshawlaw.com
ppederson@hinshawlaw.com

M. Annie Santos (*pro hac vice*)
250 Nicollet Mall, Suite 1150
Minneapolis, MN 55401
Tel: 612-334-2540
Fax: 612-334-8888
asantos@hinshawlaw.com

*Attorneys for Defendant*

21

1103350\330358864.v1