IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDULLA AJETI, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA | : | NO. 26-3249 |
| | : | |

MEMORANDUM

Bartle, J. July 27, 2026

The seventeen plaintiffs are all citizens of the Republic of Kosovo. They seek to recover long-term disability benefits under an employee benefit plan established by AECOM, their employer. They allege that defendant Life Insurance Company of North America denied them their benefits as the insurer under the plan.

The action was initially brought in the Court of Common Pleas of Philadelphia County. The Defendant timely removed the action on the ground that it involved a federal question under 28 U.S.C. § 1331. It maintains that plaintiffs' claims are preempted by the Employee Retirement Income Securities Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1193c.

Before the court is the motion of plaintiffs to remand this action to the Common Pleas Court under 28 U.S.C. § 1447(c). They assert that there is no federal question on which their complaint is predicated. Only state law causes of action are pleaded. They argue that ERISA does not apply because their

claims are extraterritorial due to the fact that plaintiffs are foreign nationals injured in a foreign country. They further argue that even if ERISA applies extraterritorially, certain of their claims remain outside the scope of ERISA. Defendant, as the party asserting jurisdiction, has the burden of demonstrating that the action is properly before this court. Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

In addition, defendant has moved to dismiss plaintiffs' claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In defendant's view, the complaint is fatally deficient for not grounding plaintiffs' claims on § 502(a) of ERISA, 29 U.S.C. § 1132(a). At this stage the court must accept as true all well pleaded facts in plaintiffs' complaint. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

I

The plaintiffs assert that they were employed by AECOM, an American company, to supply support services to the United States military in Afghanistan from 2011 through 2019.[1]

[1] It is undisputed that AECOM uses affiliates AC First LLC and Global Sourcing Solutions to supply labor. For present purposes, all parties agree that AECOM was the plaintiffs' employer.

According to the complaint, AECOM established an employee benefit plan which was supported by group insurance provided by the defendant. Plaintiffs paid premiums for the insurance in issue, suffered on-the-job injuries, and have not received the disability benefits due them.

The complaint alleges breach of contract, fraud, conspiracy to commit fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, promissory estoppel and negligence. All are claims under state law. Ordinarily, the court looks only to the face of plaintiffs' complaint to determine if a federal question exists and does not consider anticipated defenses even if they are predicated on federal law or even federal preemption. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). The court, however, may look beyond the face of the complaint when Congress has completely preempted the field. Congress has done so on two occasions: (1) under the National Labor Relations Act, 29 U.S.C. §§ 151-69, and (2) under ERISA. Metro. Life Ins. Co., 481 U.S. at 63-67; Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557 (1968).

The salutary purpose of ERISA is to protect the interests of participants and their beneficiaries in employee benefit plans, to provide a uniform and comprehensive regulatory

regime, and to provide remedies, sanctions, and ready access to the federal courts. See 29 U.S.C. § 1001; Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). If the pleaded state law claims are within the scope of ERISA, they are not only preempted but displaced by the civil enforcement provision of ERISA, § 502(a)(1)(B). Metro. Life Ins. Co., 481 U.S. at 63-67.

II

Plaintiffs argue that ERISA does not apply here because their claims are extraterritorial. Plaintiffs point to the fact that they are citizens of Kosovo, worked in Afghanistan, and suffered physical injuries in Afghanistan.

The Supreme Court most recently outlined in Yegiazaryan v. Smagin, 599 U.S. 533 (2023), the steps a court must follow in determining whether a statute applies to injuries or conduct beyond the borders of the United States. That action involved claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68.

The Court reiterated that a presumption exists against extraterritoriality of statutes enacted by Congress. Yegiazaryan, 599 U.S. at 541. There are two rationales for the presumption. First, it reflects concerns about international comity and avoidance of clashes with the laws of other nations. Id. Second, there is the "commonsense notion that Congress

generally legislates with domestic concerns in mind." Id. (quoting Smith v. United States, 507 U.S. 197, 204 n.5 (1993).

To determine if the presumption is rebutted, the court must first ask "whether the statute gives a clear, affirmative indication that it applies extraterritorially," that is that it covers foreign injuries. Id. If so, the presumption is rebutted. If the answer is "no," the court moves to the second step – "whether the case involves a domestic application of the statute, which is assessed by looking to the statute's focus." Id. at 542 (citation modified). The court rejected a bright line rule that the injury occurs where the plaintiff resides. Instead, "courts should look to the circumstances surrounding the alleged injury to assess whether it arose in the United States." Id. at 543-44. This is a case-specific inquiry. Id. at 544.

III

The first step requires examination of the language of ERISA itself to see if it answers the question of extraterritorially. Under § 1003(a)(1), ERISA coverage broadly extends, with certain exceptions enumerated in that subsection but not relevant here, "to any employee benefit plan if it is established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce." There is no doubt that AECOM, a domestic company and plaintiffs' employer,

established or maintained an employee benefit plan as the subscriber to insurance provided by defendant for the purpose of providing disability benefits to plaintiffs among others. See 29 U.S.C. §§ 1002(a)(1) and (3). Nor is there any dispute that AECOM is engaged in commerce.

Section 1003(b) carves out certain exceptions to § 1003(a). Under § 1003(b)(4), the only exception of any possible relevance here, a plan covering both domestic and foreign employees is excluded from the application of ERISA if it is "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens."

The plan in issue here was established in the United States by AECOM, a domestic employer in commerce, with the defendant, a domestic insurance company as the insurer. The plan covers over 20,000 United States employees as well as foreign employees such as plaintiffs. It was agreed by all parties at oral argument that the number of domestic employees covered is substantially greater than the number of foreign employees. The plan is maintained inside the United States primarily but not exclusively for the benefit of employees in the United States. The claims offices of defendant in the United States, according to the complaint, investigated and wrongfully denied plaintiffs' claims for benefits.

The exception in § 1003(b)(4) would be surplusage and Congress would have had no reason to have enacted it if the language of § 1003(a) was not expansive enough to include such plans thereafter excluded under § 1003(b)(4). If a benefit plan "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens" is included under § 1003(a) before any reference to § 1003(b)(4), surely the plan here maintained inside the United States and for the benefit of persons substantially all of whom worked in the United States must be within the scope of § 1003(a). The only fair reading of § 1003(a), taken in context, places within the scope of ERISA the employee benefit plan which is the subject of the present lawsuit.

Plaintiffs ask the court not to focus on the plan itself but on the status of the individual employees in determining whether ERISA applies. The Supreme Court has stated that "the purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." Aetna Health, 542 U.S. at 208. Uniform treatment of pension plan benefits is the touchstone of ERISA. Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 17 (2004). Our Court of Appeals has likewise cautioned against the anomaly of requiring some insureds under a benefit plan to pursue benefits under state law while allowing others to pursue benefits under ERISA.

Wolk v. Unum Life Ins. of Am., 186 F.3d 352, 357 (3d Cir. 1999). Such an approach, in that Court's view, would defeat ERISA's goal of uniformity. Id. Accordingly, the plaintiffs as foreign employees must not be treated differently under an employee benefit plan than domestic employees. ERISA gives a clear affirmative indication that it applies to the plan in issue, including the benefits owed to its foreign beneficiaries.

Plaintiff cites EEOC v. Arabian Am. Oil Co. ("ARAMCO"), 499 U.S. 244 (1991), decided before Yegiazaryan, to support its position that ERISA does not apply extraterritorially. There, a United States citizen claimed he was subject to racial, religious, and national origin discrimination while working abroad for an American company. Id. at 247. The question before the Supreme Court was whether Title VII, 42 U.S.C. §§ 2000e-2000e-17, applied extraterritorially. The Supreme Court held that the plaintiff did not overcome the presumption against extraterritoriality and ruled that he had no claim under Title VII. Id. at 259. It considered only step one in its analysis and not the two steps as subsequently outlined in Yegiazaryan.

Title VII applies to employers with fifteen or more employees "engaged in an industry affecting commerce." ARAMCO, 499 U.S. at 249. The plaintiff relied on what is known as "the alien exception" of Title VII as a basis to argue that Title VII covered plaintiff's claim. Id. at 253. That exception read

that Title VII "shall not apply to an employer with respect to the employment of aliens outside any state." Id. Plaintiff argued that by negative inference Title VII covered him as an American citizen outside of the United States or otherwise the exception would be meaningless. The Court disagreed. It construed the exception more narrowly. It concluded that "outside any state" in the exception meant outside any state but within territory controlled by the United States. Id. at 254. Thus, the exception by negative inference did not show that Title VII covered plaintiff, an American citizen who was discriminated against in a foreign country.

In contrast to ARAMCO, the exemption of ERISA in § 1003(b)(4) does not use the words "outside any state." Instead, § 1003(b)(4) exempts from ERISA coverage a plan which "is maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens." This exemption clearly reaches beyond the states, territories, and possessions of the United States.[2]

---

[2] Section § 1002(10) provides:

> The term "State" includes any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, and the Canal Zone. The term "United States" when used in the geographic sense means the States and the Outer Continental Shelf lands defined in

Consequently, as noted above, § 1003(a) governs the employee benefit plan here, which is maintained in the United States and covers thousands of American employees as well as some foreign employees who are injured in a foreign country. Otherwise, § 1003(b)(4) would be suplusage.

The Court in ARAMCO was also concerned about the difficult issues of international law if Title VII were to subject to lawsuits foreign corporations operating in foreign commerce and employing American citizens. See Aramco, 499 U.S. at 255-56. Any clash with international law is not a concern under ERISA. Plaintiffs who are foreigners are suing an American insurer in the United States. The only potential clash here is between federal and state law.

The Court in ARAMCO noted another reason for finding no extraterritoriality. Title VII has an administrative component. The Court explained that Congress did not provide "any mechanism for overseas enforcement of the statute." Id. at 256. ERISA has no such administrative regimen.

The plaintiffs in support of their motion to remand, also rely heavily on In Re Reliance Standard Life Insurance Co., 386 F. Supp. 3d 505 (E.D. Pa. 2019), and Bajrami v. Reliance Standard Life Insurance Co., 334 F. Supp. 3d 659 (E.D. Pa.

---

the Outer Continental Shelf Lands Act (43 U.S.C. 1331-1343).

2018), two non-binding decisions handed down in this court.[3] In each case, the plaintiff or plaintiffs were foreign nationals employed by a domestic company to support U.S. military operations in Afghanistan. They sued for nonpayment of benefits under a domestic employee benefit plan due to injuries on the job. The benefit plan was funded by insurance provided by an American insurance company. Plaintiffs initially filed suit with only state law claims in the state court. The defendant removed the cases based on its view that ERISA preempted those claims. In each case, the court granted the plaintiffs' motion to remand on the ground that ERISA did not apply extraterritorially.

These two actions appear to be similar factually to the case at bar. Nonetheless, they were both decided prior to the Supreme Court's decision in Yegiazaryan, so that the District Court did not have the benefit of its reasoning. The opinions, not surprisingly, did not engage in any analysis of step two as outlined in Yegiazaryan for deciding whether ERISA has extraterritorial application. In addition, the discussion in those two cases of the exemption under § 1003(b)(4) is not

[3] Plaintiffs also cite two other similar district court decisions: Ymeri v. Life Insurance Co. of North America, No. 2:21-cv-01491-VAP-JPRx (C.D. Cal. Apr. 20, 2021), and Chong v. InFocus Corp., No. 08-500, 2008 WL 5205968 (D. Or. Oct. 24, 2008).

persuasive. For all these reasons, reliance on these district court citations fails.

ERISA gives a clear indication that it applies extraterritorially to the plaintiffs' claims for benefits.

IV

If ERISA does not give a clear indication that it applies extraterritorially, the defendant argues that ERISA applies under step two as explained in Yegiazaryan. This requires the court to consider whether a domestic injury is alleged. It is a case-specific inquiry. 599 U.S. at 544.

Yegiazaryan focused on whether Smagin, the plaintiff, suffered a domestic injury under RICO. Id. at 536-37. There Smagin, a citizen and resident of Russia, alleged he had been defrauded in Russia by defendant, a fellow Russian, who thereafter fled to California where he had significant hidden assets. Id. at 537. Smagin later obtained an arbitration award in London against Yegiazaryan and obtained summary judgment in his favor in an enforcement action in the federal court in California. Id. 537-38. Thereafter, Smagin brought a RICO action against Yegiazaryan and others after they thwarted Smagin's efforts to collect the judgment. Id. at 539. The District Court dismissed this RICO action because Smagin had not alleged a domestic injury. Id. at 540. The Court of Appeals reversed, and the Supreme Court affirmed the Court of Appeals.

Id. at 540-41. The Supreme Court held that Smagin's RICO action could go forward under step two because Smagin alleged a domestic injury in the United States under the facts and circumstances alleged. Id. at 545-46.

Plaintiffs, like Smagin, have asserted a domestic injury. While plaintiffs are foreign citizens and suffered physical losses outside the United States, which the defendant here did not cause, they have also suffered injurious economic effects of those losses in the United States. Defendant, as plaintiffs' domestic insurer, investigated and denied plaintiffs their benefits in the United States and failed to pay them benefits allegedly due under the employee benefit plan established by AECOM, an American company, in the United States. Like Smagin, plaintiffs here are seeking to recover in the United States what is allegedly due from a party in the United States even though the initial injury occurred in a foreign land. Plaintiffs, as beneficiaries, may bring a civil action under § 502(a)(1)(B) of ERISA "to recover benefits due. . . under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan."

The Supreme Court, to reiterate, instructs that the "courts should look to the circumstances surrounding the alleged injury to assess whether it arose in the United States."

Yegiazaryan, 599 U.S. at 543-44. Based on a case-specific inquiry, the alleged economic injuries to plaintiffs arose domestically. The presumption against extraterritoriality of ERISA therefore has also been rebutted under step two.

V

Plaintiffs do not challenge that certain of their claims are within the scope of ERISA if the statute reaches extraterritorially. Nonetheless, plaintiffs maintain that ERISA, no matter how expansive, does not encompass their claims of fraud, breach of duty of good faith, and negligent misrepresentation. These claims, according to plaintiffs, are predicated on defendant's denial letters falsely asserting untimeliness and June 2004 correspondence falsely asserting that foreign nationals were ineligible for benefits.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), with exceptions not relevant here, provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .." The essence of plaintiffs' complaint is the failure of defendant to pay plaintiffs the benefits they allege are due as employees under the employee benefit plan established by their employer pursuant to an insurance policy issued by the defendant. As previously noted, § 502(a)(1)(B) of ERISA in turn provides that a civil action may be brought by a participant or beneficiary

"to recover benefits under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiffs merely seek to "duplicate, supplement or supplant" the ERISA civil enforcement remedy by pleading a wide assortment of state law claims. This they may not do as a result of ERISA's preemption. Aetna Health, 542 U.S. at 209. Based on the alleged facts, there is no duty on the part of defendant which is independent of ERISA and the terms of the insurance policy. See id. at 210.

Our Court of Appeals in Ahn v. Cigna Health and Life Insurance Co., 179 F.4th 187, 193 (3d Cir. 2026), has recently reaffirmed that "ERISA broadly preempts state-law claims." In that case, plaintiff had alleged a claim of defamation per se against a healthcare provider based on its alleged false statements made to beneficiaries that plaintiff was not licensed to practice medicine. The Court held that the claim was preempted by ERISA. It noted that explanations of decisions concerning benefits are central to the administration of any ERISA plan. Id. at 191-92. If the state law claims there are preempted, it follows that any state law claim revolving around the denial of benefits by the benefit plan's insurer are also preempted.

Plaintiffs' reliance on National Security Systems, Inc. v. Iola, 700 F.3d 65 (3d Cir. 2012), is misplaced. There,

plaintiffs, as employers, alleged misrepresentation and fraud in the inducement on the part of an insurance broker to persuade them to participate in an employee benefit plan before it existed. The Court of Appeals held that these claims were not preempted by ERISA and allowed them to go forward. Id. at 84-85. In contrast, the claims here against defendant all arose out of its alleged wrongful denial of benefits after the employee benefit plan was established and plaintiffs were participants.

None of plaintiffs' claims is beyond the scope of ERISA.

VI

Defendant also moves to dismiss the complaint under Rule 12(b)(6) for failure of plaintiffs to state a claim upon which relief can be granted. Plaintiffs plead only state law claims. All those claims, as noted above, are within the scope of ERISA and are completely preempted. ERISA applies extraterritorially under the facts alleged. Thus, plaintiffs have failed to plead any viable claim.

VII

Accordingly, the motion of plaintiffs to remand this action to the Court of Common Pleas of Philadelphia County will be denied. The motion of defendant Life Insurance Company of North America to dismiss the complaint under Rule 12(b)(6) will

be granted without prejudice to plaintiffs' right to file an amended complaint within ten days.